**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANTHONY HAROLD WHALER,

Defendant-Appellant.

No. 06-6154
(D.C. No. CR-05-39-002-T)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

Anthony Harold Whaler appeals his conviction on one count of possessing pseudoephedrine knowing or having reasonable cause to believe it would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2). We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

On the night of January 8, 2005, Benjamin Ray Dodson drove Mr. Whaler and Kassandra Gayle Fox approximately sixty-eight miles from Cache, Oklahoma, to Wichita Falls, Texas, ostensibly to exchange a DVD player at Wal-Mart. In Wichita Falls, they visited two Wal-Mart stores. At about 9 p.m. at one store, one of the group purchased three boxes of cold medicine. By 10:30 p.m. the group had reached the other Wichita Falls store, where one of them used a shopping card to purchase another two boxes of cold medicine and to activate two Wal-Mart shopping cards (2-B transaction). Then at 10:40 p.m. one of the group went through another register and purchased two more boxes of cold medicine with one of the newly activated shopping cards (2-C transaction). In all, the group participated in at least four transactions at this store within thirteen minutes, all at different registers. By 11:15 p.m., the group had returned to the first store, where the shopping cards activated at the second store were used to purchase boxes of cold medicine in at least three separate purchases at different registers.[1]

---

[1]     The appellate record does not contain copies of the exhibits presented at trial, so our review is limited to the testimony concerning the exhibits. Exhibits 2-A through 2-D were identified as receipts from the Wal-Mart transactions, with 2-B being the receipt from the 2-B transaction and 2-C the receipt from the 2-C transaction. Exhibit 3 was identified as a Wal-Mart videotape showing the 2-C transaction. Apparently Exhibit 4, a summary presented by the government, showed that the group used Wal-Mart shopping cards eight times on January 8, 2005, to purchase cold medicines containing pseudoephedrine.

Soon after the three crossed back over the Oklahoma state line, a police officer stopped the car for failing to stop at a stop sign. Mr. Dodson consented to a search of the vehicle, and the officer discovered twenty-three boxes of cold medicine in Wal-Mart bags in the trunk. Knowing that cold medicine commonly is used to make methamphetamine, the officer became suspicious and arrested the three. During a pat-down search the officer found two receipts in Mr. Whaler's pocket, which Mr. Whaler said he took off the dash of the car. The receipts were from the 2-B and 2-C transactions. Initially Mr. Whaler stated he did not know anything about the cold medicine, but after Mr. Dodson was placed in a different car, Mr. Whaler told police that Mr. Dodson gave him and Ms. Fox a ride to Wichita Falls and had asked them to buy cold medicine.

Mr. Dodson and Ms. Fox eventually pleaded guilty to possessing pseudoephedrine knowing or having reasonable cause to believe it would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2). Mr. Whaler was tried before a jury. At trial, A Drug Enforcement Administration (DEA) agent testified that pseudoephedrine is a key ingredient for making methamphetamine. He testified that in 2004 Oklahoma had passed a law limiting individuals' ability to purchase cold medicines containing pseudoephedrine, and that after the law passed, the DEA began to see more people leaving the state to acquire pseudoephedrine. He also testified that if taken according to the package directions, the pills presented as exhibits at trial would last for about six months.

In addition, the officer who stopped the car described the stop and testified that there were Wal-Mart stores in Lawton, Oklahoma, which is approximately twenty-five miles closer to Cache than Wichita Falls. A Wal-Mart loss-prevention employee testified that the Wichita Falls Wal-Mart stores had seen an increase in purchases of products containing pseudoephedrine after the passage of the Oklahoma law, and so they voluntarily limited customers to purchasing three boxes of cold medicine per transaction. He also identified the Wal-Mart videotape of the 2-C transaction.

Mr. Dodson and Ms. Fox both testified against Mr. Whaler, stating that the three had decided to buy pills to make methamphetamine to split among themselves. Mr. Dodson testified that he and Mr. Whaler had previously cooked and used methamphetamine together and that Mr. Whaler provided the shopping cards to purchase the pills. He testified that he bought clothes at Wal-Mart to change into and disguise himself as he went back through the registers, and that each member of the group bought cold medicines that night. He also identified Mr. Whaler on Exhibit 3, the Wal-Mart videotape. Ms. Fox testified that she and Mr. Whaler had used methamphetamine together previously, that she, Mr. Dodson, and Mr. Whaler had discussed using the cold pills to make methamphetamine, that all three of them were involved with buying the cold medicine the night of January 8, and that they had stopped at one point and counted the grams to see how close they were to their goal of sixty grams. Both

-4-

Mr. Dodson and Ms. Fox admitted that they had pleaded guilty to charges stemming from the arrest and that their cooperation could result in them receiving more favorable treatment.

The jury found Mr. Whaler guilty, and the district court sentenced him to serve 115 months' imprisonment. Mr. Whaler appeals his conviction.

## II.

## A.

Mr. Whaler first argues that the district court erred when it failed to give the jury a separate accomplice-testimony instruction. He concedes that the standard of review is for plain error because he did not raise this issue in the district court. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993). Under this standard, an error must be "plain" and "affect[] substantial rights." *Id.* at 732 (quotations omitted). Even if these conditions are met, "[Federal Rule of Criminal Procedure] 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations and alteration omitted).

"Accomplice instructions are required when a defendant is tied to a crime solely through the uncorroborated testimony of an accomplice-witness." *United States v. Serrata*, 425 F.3d 886, 900 (10th Cir. 2005). Thus, "if the testimony of an accomplice is uncorroborated, the court must instruct the jury that testimony of

-5-

accomplices must be carefully scrutinized, weighed with great care, and received with caution," and a failure to do so may constitute plain error. *United States v. Hill*, 627 F.2d 1052, 1053 (10th Cir. 1980) (quotations omitted). "Accomplice testimony is uncorroborated 'when the testimony . . . is the only testimony directly tying the defendant into the criminal transaction.'" *United States v. Gardner*, 244 F.3d 784, 789 (10th Cir. 2001) (quoting *United States v. Williams*, 463 F.2d 393, 395 (10th Cir. 1972)).

Clearly Mr. Dodson and Ms. Fox were accomplices. Unlike the situation in *Gardner*, however, there was evidence other than their testimony connecting Mr. Whaler to the crime, including the Wal-Mart videotape, the receipts found in Mr. Whaler's pocket, and Mr. Whaler's own statement to police that Mr. Dodson asked him to purchase cold pills. Thus, although the accomplices testified about matters not addressed by other evidence, their testimony as a whole was "substantially corroborated," and the district court did not plainly err in failing to give a separate accomplice instruction. *Serrata*, 425 F.3d at 900-01; *see also United States v. Wiktor*, 146 F.3d 815, 818 (10th Cir. 1998) (per curiam); *United States v. Shuckahosee*, 609 F.2d 1351, 1356-57 (10th Cir. 1979); *United States v. Waldron*, 568 F.2d 185, 187 (10th Cir. 1977) (per curiam).

Even assuming, as Mr. Whaler contends, that the lack of corroboration regarding Mr. Whaler's intent required a separate accomplice instruction and the failure to provide such an instruction constituted an error that was plain, this

court should exercise its discretion to correct the forfeited error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (quotations and alteration omitted). We do not believe that any error here would qualify for an exercise of discretion. "[T]he concern is whether [the defendant's] rights were recognized in the court's rulings and in the court's instructions." *Hill*, 627 F.2d at 1054 (quotation omitted). In Instruction 18, the jury was instructed that "[a]ll evidence of a witness whose self-interest or attitude is shown to be such as might tend to prompt testimony favorable or unfavorable to an accused should be considered with caution and weighed with great care." R. Doc. 69 at 11-12.[2] Although the instruction does not identify Mr. Dodson and Ms. Fox by name, it certainly applies to them and generally conveys the same message as an accomplice instruction. *See Waldron*, 568 F.2d at 187 ("The instruction would have informed the jury to scrutinize the accomplice's testimony carefully because he had allegedly been promised immunity from prosecution for his testimony."); *United States v. Birmingham*, 447 F.2d 1313, 1317 (10th Cir. 1971) ("[T]he court must instruct the jury that testimony of accomplices must be carefully scrutinized, weighed with great care, and received with caution."). In light of this instruction, and the principle that

---

[2] Although both parties quoted the jury instructions (district court record document No. 69) in their briefs, neither party designated them to be included in the record on appeal. We remind Mr. Whaler's counsel that it is the appellant's responsibility to provide us with a proper record on appeal. In this case, however, we sua sponte supplement the record with district court document No. 69.

"[a] defendant is not entitled to any specific wording of instructions," *United States v. McGuire*, 27 F.3d 457, 462 (10th Cir. 1994) (quotation omitted), if there were error, we would not exercise our discretion to correct it.

B.

Mr. Whaler next contends that the evidence was insufficient to support his conviction, an issue he preserved in the trial court. "Sufficiency of the evidence is a question of law that we review de novo, asking only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Chavis*, 461 F.3d 1201, 1207 (10th Cir. 2006) (quotations and alteration omitted). For conviction under 21 U.S.C. § 841(c)(2), the government must prove beyond a reasonable doubt that Mr. Whaler (1) knowingly or intentionally possessed a listed chemical (2) knowing, or having reasonable cause to believe, that the listed chemical would be used to manufacture a controlled substance.

Mr. Whaler's insufficiency argument rests on disregarding the testimony of his accomplices. But accomplice testimony alone, even uncorroborated accomplice testimony, may support a conviction, and it is the jury's job to evaluate credibility and believe or disbelieve the testimony of the witnesses. *See United States v. Magallanez*, 408 F.3d 672, 682 (10th Cir.), *cert. denied*,

126 S. Ct. 468 (2005). There is no reason to ignore the accomplice testimony presented at Mr. Whaler's trial. The evidence summarized above, taken in the light most favorable to the government, is sufficient to support Mr. Whaler's conviction.

C.

Finally, Mr. Whaler argues that § 841(c)(2) is unconstitutionally vague because it "completely fails to define the phrase reasonable cause to believe." Aplt. Br. at 34. He contends that the statute fails "to give an ordinary person reasonable notice as to the prescribed conduct," *id.*, and that it fails to give law enforcement sufficient guidance to avoid the subjective and arbitrary enforcement of the law. Moreover, he argues that the statute is unconstitutionally vague as applied to him because the jury instructions defining "reasonable cause to believe" relied on an objective mental standard rather than a subjective standard. Again, Mr. Whaler failed to raise these issues in the district court, so our review is for plain error. *Olano*, 507 U.S. at 731-32. "We conduct this analysis less rigidly when reviewing a potential constitutional error." *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005) (quotation omitted).

"The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Saffo*, 227 F.3d 1260, 1270

(10th Cir. 2000) (quotations and alteration omitted). "Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.* (quotation and alteration omitted). In *Saffo*, we concluded that "[t]he evidence produced at trial demonstrates that Saffo had knowledge of the illegality of her activities, and thus this is not a situation where she could not reasonably understand that her contemplated conduct is proscribed." *Id.* (quotation and alteration omitted). While the evidence in this case is not as compelling as the circumstances in *Saffo*, the evidence presented at Mr. Whaler's trial indicates that he is one to whose conduct the statute clearly applies. Accordingly, he may not successfully challenge § 841(c)(2) for vagueness.

In addition to his general vagueness challenge, Mr. Whaler also asserts an as-applied argument regarding mens rea. In *Saffo*, we held "that the 'knowing or having reasonable cause to believe' standard in 21 U.S.C. § 841(d)(2) [now § 841(c)(2)] imposes a constitutionally sufficient mens rea requirement." 227 F.3d at 1268. *Saffo*, however, further stated:

> In so holding, we note that the standard involves a subjective inquiry that looks to whether the particular defendant accused of the crime knew or had reasonable cause to believe the listed chemical would be used to manufacture a controlled substance. This requires scienter to be evaluated through the lens of this particular defendant, rather than from the prospective of a hypothetical reasonable man. In this

-10-

context, the "reasonable cause to believe" standard is one akin to actual knowledge.

*Id.* at 1268-69. Mr. Whaler complains that his jury was instructed under an objective "reasonable person" standard, rather than the *Saffo*-mandated subjective standard. The jury instruction states in relevant part:

> You are instructed that pseudoephedrine is a listed chemical as a matter of law and that methamphetamine is a controlled substance. You are also instructed that it does not matter whether the defendant knew that pseudoephedrine was a listed chemical. It is sufficient that the defendant knew or had reasonable cause to believe that it would be used to manufacture methamphetamine.
>
> A "reasonable cause to believe," as used in the indictment, means to have knowledge of the facts which, although not amounting to direct knowledge, would cause a reasonable person, knowing the same facts, to reasonably conclude that the pseudoephedrine would be used to manufacture methamphetamine.

R. Doc. 69 at 11-12.

In light of *Saffo*, it appears that the last paragraph of this instruction may have been erroneous, as it arguably encourages the jury to focus on the knowledge of a hypothetical reasonable person. *See also United States v. Buonocore*, 416 F.3d 1124, 1133 (10th Cir. 2005) (stating the court's instructions in § 841(c)(2) case correctly stated the law where "[t]he court instructed the jury that Defendant must have known or had reasonable cause to believe that the ephedrine and pseudoephedrine he sold would be used to manufacture methamphetamine" and "further instructed the jury that this inquiry is entirely subjective, the inquiry is not to be viewed from the perspective of a hypothetical

-11-

reasonable person, and the *mens rea* element is not satisfied if Defendant acted through mistake, negligence, carelessness, or belief in an inaccurate proposition"). Even where there is an error, though, under the plain error standard it is within our discretion whether to correct it. *Olano*, 507 U.S. at 732. We are not convinced that any error here "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations and alteration omitted). The second paragraph quoted above appears to be in the nature of a general definition refining the last sentence of the first paragraph, which informed the jury that Mr. Whaler himself had to have the required knowledge or "reasonable cause to believe." R. Doc. 69 at 12. Thus, the jury actually was instructed to focus on Mr. Whaler's own state of mind.

Moreover, the evidence presented at trial generally focused on § 841(c)(2)'s "knowing" prong rather than the "reasonable cause to believe" prong. Consequently, it does not appear that Mr. Whaler's substantial rights were affected by any error in the "reasonable cause to believe" instruction. *See United States v. Lajoie*, 942 F.2d 699, 702 (10th Cir. 1991) (holding that, where the erroneous instruction concerned a component of the charge other than the component which was the focus of the government's case, the misstatement was harmless); *see also United States v. Parnell*, 581 F.2d 1374, 1382 (10th Cir. 1978) ("It is well established that where a crime denounced disjunctively in the statute

-12-

is charged in the conjunctive, proof of any one of the allegations will sustain a conviction.").

III.

The judgment of the district court is AFFIRMED.

Entered for the Court

Robert H. Henry
Circuit Judge