**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BERTHA KEYLON,

        Plaintiff-Appellant,

    v.

CITY OF ALBUQUERQUE; MARTIN
CHAVEZ, in his individual capacity
as Mayor of the City of Albuquerque;
GIL GALLEGOS, in his individual
capacity as Chief of Police of the City
of Albuquerque Police Department;
SCOTT BARNARD, City of
Albuquerque Police Officer,

        Defendants-Appellees,

and

DAVID SEDILLO, Defendant.

No. 07-2071

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO
(D.C. No. 1:04-cv-01303-JAP-RLP)**

---

Joseph P. Kennedy, Kennedy Law Firm, Albuquerque, New Mexico, for Plaintiff-
Appellant.

Kathryn C. Levy, Deputy City Attorney, City of Albuquerque, Albuquerque,
NewMexico, for Defendants-Appellees.

Before **HENRY**, Chief Judge, **BALDOCK** and **TYMKOVICH**, Circuit Judges.

**HENRY**, Chief Judge.

Bertha Keylon, brought suit against Officer Scott Barnard, under 42 U.S.C. § 1983, alleging that her Fourth Amendment rights were violated when she was arrested without probable cause for concealing her identity. After a jury found Officer Barnard not liable, Ms. Keylon submitted a post-trial motion including (1) a Rule 50(b) request for judgment as a matter of law; (2) an objection to the district court's submission of the question of qualified immunity to the jury; and (3) a request that the claims against the City of Albuquerque be tried. The district court denied each claim.

We exercise jurisdiction pursuant to 18 U.S.C. § 1291 and reverse. Because there were no disputed issues of material fact, we hold that the district court erred in denying Ms. Keylon's judgment as a matter of law, and in submitting the question of qualified immunity to the jury.

**I. BACKGROUND**

As this is a judgment of a matter of law, we view the evidence in the light most favorable to Officer Barnard; thus, we have adopted his version of the facts, which are, in any event, undisputed by Ms. Keylon on appeal. *See Herrera v.*

2

*Lumpkin Indust., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007) (when reviewing Rule 50 decisions, we must view all the evidence in the light must favorable to the non-moving party).

On the morning of September 28, 2003, Officers Scott Barnard and David Sedillo were dispatched to Bertha Keylon's home because a tow-truck driver was complaining about damage to his truck caused by Michael Martinez, who drove a vehicle off of it. Mr. Martinez had exited Ms. Keylon's home before the alleged offense. When the officers arrived on the scene, the tow-truck driver told them that the damage amounted to roughly $4000, which could make the removal of the car a felony under New Mexico law. The driver directed Officer Barnard's attention to Ms. Keylon, who was walking out of her home, and he identified her as Mr. Martinez's mother. Officer Barnard approached Ms. Keylon, introduced himself, and asked her if he could ask a few questions. He informed Ms. Keylon that her son was the subject of a felony investigation, and that he would need to get some information from her. He asked Ms. Keylon her son's birthday and address, and she responded that she did not know.

Believing that she was being "untruthful and evasive," Officer Barnard asked for Ms. Keylon's identification. Aples' Br. at 8. Ms. Keylon did not produce identification, and instead approached her van. Officer Barnard put his hand up, preventing Ms. Keylon from getting in. He asked her where her identification was, and she told him that it was in her purse, which was in the

3

house.  She started walking up the driveway towards her home, at which point Officer Barnard said, "Ma'am, I need to see your ID."  Ms. Keylon responded, "Well, I'll get my ID when I'm ready."  Tr., at 225.  Officer Barnard then placed her under arrest for concealing her identity, in violation of N.M. Stat. Ann. § 30-22-3.  All of this occurred on the sidewalk and lawn in front of Ms. Keylon's home.

Ms. Keylon filed a § 1983 complaint, alleging Fourth Amendment violations by Officers Barnard and Sedillo, and alleging supervisory and municipal claims against the Mayor of Albuquerque, the Chief of Police, and the City of Albuquerque.  Specifically, Ms. Keylon claimed that she was detained, arrested, and charged with a crime without reasonable suspicion or probable cause, and that the City and its policymakers failed to properly supervise and train its officers in Fourth Amendment protections.  The individual defendants' and municipal defendants' trials were bifurcated, and Ms. Keylon voluntarily dismissed her action against Officer Sedillo, meaning that in the jury trial, she only tried her unreasonable detention and arrest claims against Officer Barnard.

Before the trial began, Ms. Keylon filed a motion for summary judgment against Officer Barnard, claiming that as a matter of law, Officer Barnard had no basis to detain her and no probable cause to arrest her.  The district court denied her motion for summary judgment, finding that there were disputed facts for a jury to decide.  Specifically, with regard to Officer Barnard's arrest of Ms. Keylon, the

4

court found that there were genuine issues of fact as to whether Officer Barnard reasonably believed he had probable cause to arrest Ms. Keylon. Dist. Ct. Rec., doc. 35. *See United States v. Whaler*, 219 Fed.Appx. 821, 825 n.2 (10th Cir. 2007) (unpublished) (sua sponte supplementing the record with a district court document). However, in the district court's order denying summary judgment, the court pointed to no specific disputed facts and discussed only questions of law. At the close of evidence, Ms. Keylon requested that the court enter judgment as a matter of law in her favor. The district court also denied this motion.

The trial court submitted the question of Officer Barnard's qualified immunity to the jury. Jury Instruction 10 read:

> If you find that Plaintiff has proven her Fourth Amendment claim, then you must consider Defendant Barnard's defense that his conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident, and that therefore Defendant Barnard is not liable for any damages to the Plaintiff.
> . . . .
>
> If, after considering the scope of discretion and responsibility generally given to police officers in the performance of their duties, and after considering all of the surrounding circumstances in the case as they reasonably would have appeared at the time Defendant Barnard arrested Plaintiff, you find from the preponderance of the evidence that the Plaintiff has proven either that (1) Defendant Barnard was plainly incompetent or (2) that Defendant Barnard knowingly violated the law regarding Plaintiff's Fourth Amendment rights, then you must find for Plaintiff on her claim against Barnard. But if you find that Defendant Barnard has proven that he had a reasonable belief that his actions did not violate the Fourth Amendment rights of Plaintiff, then you cannot find Defendant Barnard liable even if the Plaintiff's Fourth Amendment rights were in fact violated as a result of Defendant Barnard's objectively reasonable action.

5

Aplt's App. vol. I, at 21.  Ms. Keylon objected to this instruction at trial.  The jury ruled in favor of Officer Barnard, and the district court dismissed with prejudice the claim against Officer Barnard, along with those against the municipal defendants.

Ms. Keylon filed a post-trial motion, again raising her claim for judgment as a matter of law, and again objecting to the district court's qualified immunity instruction.  She also requested that the claims against the City of Albuquerque be tried.  The district court denied her motion.  Ms. Keylon timely appealed.

On appeal, Ms. Keylon claims the district court erred when it: (1) denied her request for Rule 50(b) relief – judgment as a matter of law; (2) submitted the issue of qualified immunity to the jury; and (3) denied her request for Rule 60(b) relief from judgment on the grounds that the municipal and supervisory defendants were improperly dismissed.

## II.  DISCUSSION

### A. Standard of Review

We review *de novo* a district court's denial of a Rule 50 motion for judgment as a matter of law.  *Escue v. Northern OK College*, 450 F.3d 1146, 1156 (10th Cir. 2006).  Motions brought under Rule 50 "test whether there is a legally sufficient evidentiary basis for a reasonable jury to find for the moving party."

*Ruyle v. Continental Oil Co.*, 44 F.3d 837, 841 (10th Cir. 1994) (internal quotation marks omitted). We must view the evidence in the light most favorable to Officer Barnard. *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1279 (10th Cir. 2003) ("In reviewing the district court's refusal to grant JMOL, this court draws all reasonable inferences in favor of the nonmoving party . . . .") (internal quotation marks omitted). A district court's refusal to grant judgment as a matter of law may be reversed "only if the evidence is such that without weighing the credibility of the witnesses the only reasonable conclusion is in [the moving party]'s favor." *Hurd v. Am. Hoist & Derrick Co.*, 734 F.2d 495, 499 (10th Cir. 1984).

## B. Analysis

Ms. Keylon's counsel first moved for judgment as a matter of law at the close of evidence. Tr., at 371. Specifically, counsel argued, "I want to make it clear for the record . . . that plaintiff does indeed move for judgment as a matter of law in her favor under Rule 50 for the same reason that we believe the qualified immunity standard is a legal question for the Court to decide and not the jury [namely, that there is no genuine issue of material fact], and in this case, I believe the Court should decide that no reasonable police officer could believe that Mrs. Keylon violated any statute when she was arrested." *Id.* After hearing Ms. Keylon's arguments that the undisputed evidence in Ms. Keylon's case showed

7

that no reasonable officer would believe that he could arrest her for concealing identity, the district court denied Ms. Keylon's motion, saying simply, and without elaboration, "I believe that the facts are so in dispute that, depending on which version the jury believes, it could reasonably reach a verdict in either direction." *Id.* at 372.

Ms. Keylon renewed her motion for judgment as a matter of law in a post-trial motion. The district court denied her motion for judgment as a matter of law. Rule 50 provides relief to the moving party, "[i]f a [non-moving] party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." FED. R. CIV. P. 50(a)(1). The district court found that Ms. Keylon's motion did not raise questions about the legal sufficiency of the evidence, but only raised questions of law that had already been raised at trial. Aplt's App. vol. I, at 55.

Ms. Keylon's motion for judgment as a matter of law argues that the undisputed facts clearly show that no reasonable officer could have believed he had probable cause to arrest Ms. Keylon. We have held that, while probable cause is usually a question for the jury, a court should decide it when there is no genuine issue of material fact. *Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007). "A factual dispute is only genuine if the evidence and the inferences drawn therefrom, when viewed in the light most favorable to the nonmoving party, are such that a

8

reasonable jury could return a verdict for the nonmoving party." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1252 (10th Cir. 2007) (internal quotation marks omitted). Ms. Keylon is right—in her case, there was no genuine issue of material fact.

Because there were no issues of genuine fact with respect either to 1) whether Ms. Keylon's Fourth Amendment rights were violated, or 2) whether Officer Barnard was entitled to qualified immunity as a defense, we hold that the district court erred in denying Ms. Keylon's motion for judgment as a matter of law.

## 1.      Fourth Amendment violation

As a matter of law, based on the undisputed facts, Officer Barnard violated Ms. Keylon's Fourth Amendment rights. A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause. *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (internal quotation marks omitted).

Officer Barnard arrested Ms. Keylon for concealing her identity, in violation of New Mexico law, which provides:

9

Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.

N.M. STAT. ANN. § 30-22-3. However, to arrest for concealing identity, there must be reasonable suspicion of some predicate, underlying crime. *See Brown v. Texas*, 443 U.S. 47, 52 (1979) (observing that whatever purposes may be served by "demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it"). The jury instructions noted this, stating that "a police officer may detain a person and ask the person to disclose her name or produce identification if he has a reasonable suspicion or probable cause to believe that she has committed a crime or is about to commit a crime." Aplt's App. vol. 1, at 20.

Officer Barnard claims that he had probable cause to suspect that Ms. Keylon violated New Mexico law by giving evasive answers to his questions, in violation of New Mexico law, which provides:

Resisting, evading or obstructing an officer consists of:

D. Resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties.

N.M. STAT. ANN. § 30-22-1. Ms. Keylon argues that Officer Barnard's belief that her answers were evasive "does not constitute a crime in New Mexico under any

10

reading of the statute."  Aplt's Br. at 17.  We agree.

Officer Barnard did not have probable cause to arrest Ms. Keylon for evading an officer under § 30-22-1.  "In evaluating the existence of probable cause, we consider whether the facts and circumstances within the officer[']s[] knowledge . . . are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *Fogarty*, 523 F.3d at 1156 (internal quotation marks omitted).

Under New Mexico law, "[r]esisting, evading, or obstructing an officer primarily consists of physical acts of resistance."  *State v. Wade*, 667 P.2d 459, 460 (N.M. Ct. App. 1983) (internal quotation marks omitted).  Officer Barnard does not contend that Ms. Keylon engaged in any physical act of resisting prior to her arrest.[1]  New Mexico courts *have* found § 30-22-1 to prohibit certain speech, when that speech is abusive, but not when it is merely evasive.  *See id.* at 461 ("'[A]busing' speech in § 30-22-1(D) . . . covers only speech that can be called 'fighting' words.").  "'Fighting' words are those which tend to incite an immediate breach of the peace."  *Id.*  Although there was some disagreement at trial as to one of Ms. Keylon's answers (she claimed that when Officer Barnard asked her what

---

[1]Although he does contend that she physically resisted once he handcuffed her, this resistance begs the question.  The only resistance that can provide probable cause for her arrest must, necessarily, precede the arrest.  Therefore, the alleged physical resistance to the arrest is irrelevant, and we must only ask whether any facts and circumstances within Officer Barnard's knowledge could have led a reasonable officer to believe that Ms. Keylon was resisting.

11

her son's birthday was, she was confused and provided the birth-year of her other son, but Officer Barnard claims she said she did not know her son's birthday), this disputed fact is not material. Under either version of the facts, she did not recite any "fighting" words as defined by New Mexico law.

Because she did not physically resist the investigation prior to her arrest and did not engage in any speech likely "to incite an immediate breach of the peace," *Wade*, 667 P.2d at 461, Officer Barnard did not have probable cause to believe she had violated § 30-22-1.[2] Without any reasonable basis to believe that Ms. Keylon had engaged in the crime of resisting or evading an officer, Officer Barnard could not arrest her for that crime. Further, without probable cause that Ms. Keylon had committed the predicate, underlying crime of violating § 30-22-1, Officer Barnard could not arrest her for concealing identity. *See Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County, et al.*, 542 U.S. 177, 184 (2004) (noting that "specific, objective facts establishing reasonable suspicion to believe the suspect was

---

[2]Officer Barnard also claimed at trial that he had probable cause to believe Ms. Keylon violated a city ordinance. When asked to what specific ordinance he was referring, he did not identify one. Tr., at 233. In his brief before us, Officer Barnard fails to provide us with a citation to the exact (or any) ordinance. Under the rules of appellate procedure, "[i]f the court's determination of the issues presented requires the study of statutes, rules, regulations, etc., the relevant parts must be set out in the brief or in an addendum at the end." FED. R. APP. P. 28(f). Because Officer Barnard has not cited the relevant city ordinance and has not developed his argument in this regard, we will not address it. *See O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257 (10th Cir. 2001) ("We will not make arguments for [a party] that it did not make in its briefs.").

involved in criminal activity" is necessary to require identification) (citing *Brown*, 443 U.S. at 51-52).  Because Ms. Keylon's warrantless arrest was not supported by probable cause, it was a violation of her Fourth Amendment rights.  *See Fogarty*, 523 F.3d at 1156.

## 2.  Qualified immunity

Second, the district court should have granted Ms. Keylon's motion for judgment as a matter of law against Officer Barnard because his defense of qualified immunity fails.  Because there were no disputed issues of material fact the question of qualified immunity should not have been submitted to the jury. Qualified immunity issues are almost always questions of law, decided by a court prior to trial.  *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003).  Many of our sister circuits have held that qualified immunity is never a question for the jury.[3]   However, we have recognized that "*in exceptional circumstances*

_____

[3] *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007) ("Whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury.  When a district court submits that question of law to a jury, it commits reversible error.") (citation omitted); *Willingham v. Crooke*, 412 F.3d 553, 560 (4th Cir. 2005) (holding that the court should submit any questions of material fact to the jury, but reserve for itself the legal question of qualified immunity); *Riccardo v. Rausch*, 375 F.3d 521, 528 (7th Cir. 2005) ("Immunity . . . is a matter of law for the court, to be decided without deference to the jury's resolution – and preferably before the case goes to the jury."); *Littrell v. Franklin*, 388 F.3d 578, 584 (8th Cir. 2004) ("The issue of qualified immunity is a question of law for the court, rather than the jury, to decide . . . ."); *Suboh v. Dist. Atty's Office of Suffolk*
(continued...)

13

historical facts may be so intertwined with the law that a jury question is appropriate as to whether a reasonable person in the defendant's position would have known that his conduct violated that right." *Id.* (emphasis added).

The district court found, and Officer Barnard argues, that this is a case with such "exceptional circumstances." Specifically, Officer Barnard claims that this issue was rightly sent to the jury, so that it could "evaluate[] Defendant Barnard's credibility and . . . reasonably determine[] that Defendant Barnard honestly believed he could arrest a person who refused to produce a driver's license regardless of the accuracy of his understanding of the law." Aplt's App. vol. I, at 57; Aple's Br. at 12-13. However, "[i]n [*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)], the Court reconsidered the standard it previously had established for the affirmative defense of qualified or 'good faith' immunity." *Lutz v. Weld County Sch. Dist.*, 784 F.2d 340, 342 (10th Cir. 1986). Afer *Harlow*, qualified immunity

[3](...continued)
*Dist.*, 298 F.3d 81, 90 (1st Cir. 2002) (same as *Willingham*); *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002) (same).

*But see Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) ("[W]here . . . qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."); *See Turner v. Arkansas Ins. Dept.*, 297 F.3d 751, 754 (8th Cir. 2002) (in discussing an official's burden to prove that his actions were reasonable, the court said, "[i]f such facts are undisputed, then that is a question of law to be reviewed by a court; if not, then it is a question for a jury . . . ."); *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000) ("[I]f [qualified immunity] is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct."); *Ortega v. O'Connor*, 146 F.3d 1149, 1156 (9th Cir. 1989) (same).

does not depend on the officer's subjective, good faith belief that he was not violating clearly established federal law, but instead the defense now hinges on whether that belief was reasonable. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1253 (10th Cir. 2003). Because what Officer Barnard "honestly believed" is irrelevant to the objective reasonableness test that qualified immunity analysis requires, and because Officer Barnard has presented no other issue of material fact, we disagree that this case presents "exceptional circumstances," and hold that the question of qualified immunity should not have been submitted to the jury.

Determining whether a defendant is entitled to qualified immunity involves answering two questions: (1) whether a plaintiff has asserted that the defendant violated a constitutional or statutory right, and if she has, (2) "whether that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right." *Maestas*, 351 F.3d at 1007 (internal quotation marks and alterations omitted). "In determining whether the right was 'clearly established,' *the court assesses the objective legal reasonableness* of the action at the time of the alleged violation and asks whether the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (some internal quotation marks and alterations omitted) (emphasis added).

"The objective legal reasonableness of the [defendant]'s actions is a legal

question.  But where the historical facts material to that issue are in dispute there is an issue for the jury." *Roska*, 328 F.3d at 1251 (internal quotation marks, citations, and alterations omitted).  Here, there are no material historical facts in dispute.  The only "question of fact" that Officer Barnard identifies, is whether he actually believed Ms. Keylon was being evasive and lying to him during his questioning about her son.  Aples' Br. at 12.

This factual question is much different than those that we have previously found to be material to qualified immunity analysis.  Both parties discuss two recent cases in which we held that the question of qualified immunity was rightly sent to a jury.  *Maestas* involved a state employee who filed a Title VII sexual harassment claim against her purported supervisor.  *See* 351 F.3d at 1001.  The defendant's entitlement to qualified immunity rested on (a) whether he was in fact her supervisor and (b) whether the sexual relationship was, as he argued, consensual.  If the defendant was not the employee's supervisor and their relationship was consensual, a reasonable person in his position would not have known he was violating her equal protection rights.  Thus, the question of the defendant's objective reasonableness was an issue for the jury, these issues of material fact being "dispositive of the qualified immunity issue." *Maestas*, 351 F.3d at 1010.

Officer Barnard and the district court also both rely heavily on an unpublished case, *Trujillo v. Large*, 165 Fed. Appx. 619 (10th Cir. Feb. 1, 2006)

16

(unpublished). *Trujillo* involved a § 1983 excessive force claim, with highly disputed facts. The plaintiff maintained that a police officer hit him with the butt of his handgun in a hasty attempt to knock down a door, while the officer claimed that he knocked, announced himself, waited twelve to fifteen seconds, and then shoved the door open with his shoulder. *Id.* at 621. Which version of these facts was to be believed was, as in *Maestas*, clearly dispositive of whether the officer's conduct was objectively reasonable.

Again, Officer Barnard has not pointed to similar facts in the case before us. There was no material factual dispute as to what events actually occurred between Officer Barnard and Ms. Keylon, but only as to Officer Barnard's interpretation of the exchange. The *only* issue of fact Officer Barnard points to as appropriate for the jury to decide in its qualified immunity inquiry is his credibility as to whether he believed Ms. Keylon was being evasive during their encounter. But this is not a "disputed issue of material fact concerning the objective reasonableness" of Officer Barnard's actions. *See Maestas*, 351 F.3d at 1010. Instead, this is asking the jury to determine the *subjective* reasonableness of Officer Barnard's actions—how he felt about Ms. Keylon's behavior.

"Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Officer Barnard pointed to no facts to support his contention that she was lying, instead making only general

17

statements like, "I felt it was misleading . . . just the tone . . . ," and, "she was agitated. She was upset . . . and I started getting a weird feeling." Tr., at 221, 225. Put simply, even though the district court correctly instructed the jury to determine the *objective reasonableness* of Officer Barnard's behavior, the only genuine issue of material fact that the City can point to for the jury to appropriately decide is a question of Officer Barnard's state of mind – a subjective determination.

Because any factual dispute in this case does not go to the question of the objective reasonableness of Officer Barnard's actions, this case is not an "exceptional circumstance," and the qualified immunity question should not have been submitted to the jury. *Maestas*, 351 F.3d at 1010 (Qualified immunity questions to go to the jury only when "the disputed issues of material fact concerning the objective reasonableness of [the defendant's] actions are dispositive of the qualified immunity issue.").

Having established that Officer Barnard did violate Ms. Keylon's constitutional rights, the district court should have found, as a matter of law, that Ms. Keylon has shown that her constitutional right "was clearly established [] such that a reasonable person in the defendant's position would have known that his conduct violated that right." *Id.* at 1007 (internal quotation marks and alterations omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). "In the context of an unlawful arrest, our analysis is simple, for the law was and is unambiguous; a government official must have probable cause to arrest an individual." *Fogarty*,

18

523 F.3d at 1158-59 (internal quotation marks omitted).  We have already determined that Officer Barnard did not have probable cause to arrest Ms. Keylon.  Although Officer Barnard claims he believed he did have probable cause, "[o]ur determination on this score is an independent and objective one.  Thus an officer's own subjective reason for the arrest is irrelevant."  *Id.* at 1156.  Our analysis above shows that New Mexico law is clear – no reasonable person in Officer Barnard's position could have thought he had probable cause to arrest Ms. Keylon.

## III.  CONCLUSION

Because there were no disputed issues of historical fact regarding whether Officer Barnard had probable cause to arrest, the district court erred in denying Ms. Keylon's motion for judgment as a matter of law, and erred in submitting the question of qualified immunity to the jury.   Having reversed the district court's decision we need not now address Ms. Keylon's appeal of the dismissal of municipal and supervisory defendants.  We reverse and remand for further proceedings consistent with this opinion.[4]

---

[4]Ms. Keylon also challenges the court's instruction to the jury that she had to prove not only that Officer Barnard committed a constitutional violation and that it was objectively unreasonable for him to do so, but also that he was either plainly incompetent or knowingly violated the law.  The clearly established test is whether the officer acted objectively reasonably.  *Harlow*, 457 U.S. at 818-19.  In order to determine whether an action was objectively reasonable, a court must consider such factors as: "(1) the degree of specificity with which the statute

(continued...)

---

[4](...continued) authorized the conduct in question; (2) whether the officer in fact complied with the statute; (3) whether the statute has fallen into desuetude; and (4) whether the officer could have reasonably concluded that the statute was constitutional." *Roska*, 328 F.3d at 1253. Nowhere in our precedent have we required that the plaintiff also show that the defendant was either plainly incompetent or knowingly violated the law.

We note that the Second Circuit in *Hudson v. New York City*, 271 F.3d 62, 70 n.8 (2d Cir. 2001), observed that a similar objection "may well be correct that this instruction was erroneous." We need not enter this battle at this time, having found that the issue of qualified immunity should not have been submitted to the jury in the first place.