**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**February 15, 2011**

**FOR THE TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

LEE ROY ROMERO,

        Plaintiff-Appellant,

v.

ERIC SCHUM, an officer employed
by the New Mexico State Police,
individually,

        Defendant-Appellee.

No. 10-2084
(D.C. No. 6:07-CV-01093-MV-RHS)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **HOLMES**, Circuit Judges.

Plaintiff Lee Roy Romero commenced this civil rights/state tort action in

New Mexico following a warrantless arrest from his home by defendant state

police officer Eric Schum for the misdemeanor offense of concealing identity,

N. M. Stat. Ann. § 30-22-3.  After the action was removed to federal court, both

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

parties moved for summary judgment. The district court formally denied the motions, though it ruled for officer Schum on an important component of the case. The court held (1) that a factual dispute as to whether the arrest began inside the home precluded summary disposition of the claim that officer Schum violated Fourth Amendment strictures in entering the home without a warrant to effect the arrest when exigent circumstances were absent, but (2) officer Schum did have probable cause to make the arrest. The case went to trial on the former issue, which the jury resolved against Mr. Romero. Following the denial of his renewed motion for judgment as a matter of law, Mr. Romero timely appealed, challenging both the district court's determination that officer Schum had constitutionally adequate grounds to arrest him and the jury's determination that, assuming the arrest was authorized, it did not involve an unlawful entry into his home. For reasons explained below, we vacate the judgment in part and remand for the determination of a crucial but thus far unresolved element of the unauthorized-arrest claim. We decline at this point to address in piecemeal fashion other analytically-subsequent issues whose resolution may be mooted by the proceedings to be conducted on remand.

Before we address specific arguments advanced by the parties, it would be helpful to set out a general summary of the events surrounding Mr. Romero's arrest. Additional factual points will be discussed later where appropriate in our analysis of the issues presented for our review.

# I. GENERAL FACTUAL BACKGROUND

On April 30, 2006, Louisa Maestas reported her teenage daughter Eve missing. Officer Schum, who had assisted in returning Eve home following a prior runaway incident, was assigned to the case. Luisa informed officer Schum that Eve had left the family home in Wagon Mound, New Mexico about a week earlier, to go to Albuquerque with her twenty-year-old boyfriend Kevin Romero. Kevin is the son of Mr. Romero and his wife Evangeline. Louisa Maestas and Mrs. Romero were in nearly daily contact regarding their children, who had been dating for some time. On May 9, Mrs. Romero told Louisa Maestas that Eve and Kevin had shown up at the Romero home in Montezuma, New Mexico, very late the previous night and stayed over, but had left in the afternoon after being told they could not stay there because they were not married. Louisa Maestas called officer Schum and relayed the information that Eve and Kevin had stayed at the Romero home the previous night. Officer Schum drove over to investigate, arriving at about 10:00 pm.

Mrs. Romero met officer Schum at the door. She repeated the facts she had told Louisa Maestas, and even showed officer Schum that the caller I.D. on her phone reflected their recent contact. She also invited officer Schum inside and provided her identification. When officer Schum asked to see Mr. Romero too, she called him out of the bedroom. Mr. Romero reiterated the account his wife had given, making it clear he did not consider it acceptable for Eve and Kevin to

stay at the house. He provided his name, phone number, and date of birth (the date that appears on his birth certificate), but said that he did not have any documentary identification with him. Officer Schum then asked for his social security number, which he refused to divulge. Mr. Romero adamantly held to the view, which he attributed to public service ads by the New Mexico Attorney General, that people should not reveal their social security numbers. Officer Schum relented and concluded the visit. He assured the Romeros that he would leave them alone, but told them to call him if Eve returned.

Officer Schum radioed dispatch the identifying information the Romeros had provided. He was told that no record had been found for a Lee Roy Romero with the specified birth date. It is not clear what data bases had been checked other than the criminal records of the National Crime Information Center and the driver's licenses records of the New Mexico Department of Motor Vehicles. In any event, officer Schum testified that, in his experience, a no-record finding from dispatch was a strong indication that false information had been provided. He decided to return to the Romero home to clear up the matter.

This second visit ended in the arrest at the heart of this lawsuit. Some of the facts regarding the encounter, particularly the precise location of the parties and manner in which officer Schum effected the arrest, were disputed. Indeed, the trial was held to resolve just these physical facts. But a general sketch of the scene, broad enough to accommodate each party's specific version, can readily be

made–indeed, much of this sketch is derived from a crude video recording made by the camera in officer Schum's patrol car.

Officer Schum was met at the door by Mrs. Romero, who was on the phone with Louisa Maestas. When he said he needed to speak with Mr. Romero, she called her husband to the door. Mr. Romero came and stood behind and to the side of his wife, who was holding the door open. Officer Schum explained that the information Mr. Romero had provided did not come up in a records search and that he needed Mr. Romero's social security number. Mr. Romero again insisted he would not divulge it, and began repeating that he had done nothing wrong. Finally, he said that if he had committed a crime, officer Schum should arrest him. With that, officer Schum moved toward the door to arrest Mr. Romero, who stepped back further into the house. Officer Schum moved past Mrs. Romero and followed Mr. Romero inside. He held Mr. Romero against a couch near the door and handcuffed him, telling him he was under arrest for concealing his identity. During the scuffle, officer Schum retrieved and examined Mr. Romero's wallet, but found no identification. He walked Mr. Romero out to his patrol car and drove them to the police station, where another search evidently revealed a record for Mr. Romero with a birth date a year earlier than the date he had given. The arrest for concealing identity was completed, though the charge was not later prosecuted.

## II. CONSTITUTIONALITY OF ARREST
## FOR CONCEALING IDENTITY

The Supreme Court held in 1979 that police officers lacking "reasonable suspicion to believe [a person] was engaged or had engaged in criminal conduct" may not demand identification and arrest the person for failing to provide it.[1] *Brown v. Texas*, 443 U.S. 47, 53 (1979). That remains black letter Fourth Amendment law. *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (2008) (holding, following *Brown*, that "to arrest for concealing identity [in violation of N. M. Stat. Ann. § 30-22-3], there must be reasonable suspicion of some predicate, underlying crime").

Mr. Romero argued, both in the summary judgment proceedings and in his renewed motion for judgment as a matter of law (JMOL), that officer Schum lacked reasonable suspicion of underlying criminal activity to justify the demand for his identification and that his resulting arrest for concealing identity was impermissible under the Fourth Amendment principle recognized in *Brown* and applied in *Keylon*. The district court's final analysis of the matter, in its order

---

[1]      Indeed, it was not until 2004 that the Supreme Court definitively held that reasonable suspicion, giving rise to a valid investigatory stop, was a *sufficient* basis upon which to premise a demand for identification punishable by arrest for noncompliance. *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 184, 186-89 (2004); *see Brown*, 443 U.S. at 53 n.3 (leaving question open); *see also Albright v. Rodriguez*, 51 F.3d 1531, 1537-39 (10th Cir. 1995) (noting unsettled state of law and granting arresting officer qualified immunity where arrest for concealing identity occurred during investigatory stop supported by reasonable suspicion).

denying the motion for JMOL, turned solely on a rejection of the legal premise of

Mr. Romero's argument, regarding the arresting officer's need for reasonable

suspicion of a predicate crime, finding that this premise was not established law

in 2006 when the events in this case took place[2]:

> Prior to the trial, the Court, ruling on a motion for summary judgment, concluded that Defendant had probable cause to arrest Plaintiff for the misdemeanor offense of concealing his identity. Plaintiff requests the Court "to determine as a matter of law that Defendant lacked probable cause to arrest Plaintiff pursuant to *Keylon*." *Keylon* states "to arrest for concealing identity, there must be reasonable suspicion of some predicate, underlying offense."
>
> The Court will not "determine as a matter of law that Defendant lacked the requisite probable cause to arrest Plaintiff pursuant to *Keylon*" because *Keylon* was decided two years after Defendant arrested plaintiff . . . [and] an earlier case involving New Mexico's concealing identity statute did not state that an officer must have reasonable suspicion of some predicate, underlying crime before arresting a person for concealing identity. *See Albright v. Rodriguez*, 51 F.3d 1531, 1537 (10th Cir. 1995) ("Twice the Supreme Court has specifically refused to determine whether an individual can be arrested for refusing to identify himself in the context of a lawful investigatory stop. The issue remains unsettled.").

District Court Order dated March 17, 2010, at 5-6 (Aplt. App. vol. I, at 177-78)

(quotation and citations omitted).

We cannot uphold this analysis. While *Keylon* was decided in 2008, it

applied a Fourth Amendment principle recognized thirty years earlier in *Brown*.

---

[2]   Presumably, the district court was tacitly invoking officer Schum's defense of qualified immunity, which would prevail unless Mr. Romero showed not only that his arrest was improper but that the impropriety would have been "apparent to a reasonable officer *in light of preexisting law*." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (emphasis added).

Indeed, consistent with the fact that it was applying law already clearly established, *Keylon* itself did not just find a constitutional violation, *see* 535 F.3d at 1216-17, but went on to deny qualified immunity as well, *id.* at 1217-20. *See also Richardson v. Bonds*, 860 F.2d 1427, 1432 (7th Cir. 1988) (holding that by 1985 "it was clearly established that a private citizen could not be arrested for failing to identify himself in response to an inquiry which was part of a legitimate police investigation, absent other suspicious circumstances"). In no way can the timing of *Keylon* be relied upon to either deny a constitutional violation or grant qualified immunity here.

Nor does *Albright* alter the analysis. Once the Supreme Court established the pertinent legal principle in *Brown*, this circuit court could not purport to nullify it in *Albright*. And of course we did not. Rather, we *acknowledged Brown*'s predicate-crime principle, *see Albright*, 51 F.3d at 1537 n.4–which was satisfied because the officer had both probable cause as to concealing identity *and* reasonable suspicion for obstruction of justice, *id.* at 1537–and focused, rather, on the converse question *Brown* left open: whether an arrest for concealing identity is permissible *even if* the officer had reasonable suspicion of criminal activity sufficient to stop the suspect, *id.* at 1537-38. *See also supra* note 1. That the unsettled nature of the latter question afforded qualified immunity to the arresting officer in *Albright*, who had reasonable suspicion to stop the plaintiff, in no way supports the denial of a constitutional violation or the grant of qualified immunity

to officer Schum here absent a finding that he likewise had reasonable suspicion of criminal activity by Mr. Romero.

We must therefore look elsewhere for an affirmable rationale supporting Mr. Romero's arrest for concealing identity. In particular, we turn to the district court's pretrial summary judgment decision, which while denying both parties' motions, nevertheless indicated that officer Schum had an adequate legal basis for arresting Mr. Romero. For reasons explained above, we pass over the district court's repeated point regarding the timing of the *Keylon* decision.

The district court also attempted to distinguish *Keylon* factually. But it is the legal principle applied in *Keylon*–the predicate-crime requirement previously established in *Brown*–that plainly controls here, not the specific circumstances of its application in *Keylon*. Unless the cited circumstances bear on the operation of the *Brown* predicate-offense requirement, and they do not, they are distinctions without a difference. First, the district court emphasized that Mr. Romero concealed his identity not by passively refusing to divulge identifying information but by actively giving false information (at least as matters appeared to officer Schum after hearing from dispatch that no record had been found matching the birth date Schum had relayed[3]). But this distinction relates to the factual basis for

---

[3]    The district court agreed with officer Schum that (1) it was reasonable to rely on the information supplied by dispatch and (2) this information, coupled with officer Schum's experience that the absence of a record strongly suggests that a subject has supplied false identification, provided probable cause to arrest

(continued...)

probable cause on the concealed-identity charge, not to the officer's requisite reasonable suspicion of another, predicate crime, which is the material point. Neither the district court nor officer Schum, who parrots this factual distinction on appeal, has provided any explanation of how the manner in which Mr. Romero may have violated the concealed-identity statute could possibly obviate or satisfy the distinct threshold inquiry under *Brown* into the arresting officer's reasonable suspicion of a another, predicate offense.

Second, as officer Schum emphasizes on appeal, he "had reasonable suspicion to investigate Mr. Romero as he was, at the very least, *a witness* to the investigation into the runaway child." Aplee. Br. at 10 (emphasis added). But *Brown* and its progeny require "reasonable suspicion to believe the [person detained for identification and arrested for failing to comply] *was engaged or had engaged in criminal conduct*." *Brown*, 443 U.S. at 53 (emphasis added); *see Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 184 (2004) (noting

---

[3](...continued)
Mr. Romero for concealing identity after he refused to provide his social security number. Considering the circumstances, particularly officer Schum's admission that Mr. Romero voluntarily gave his name, address, and phone number, right after his wife had presented her own documentary identification, it may be questionable whether probable cause existed to arrest Mr. Romero for concealing his identity, notwithstanding the lack of a record for him under the birth date he provided and his refusal to divulge his social security number to clear up the matter. But we do not pursue the point at this juncture. We limit our decision here to the district court's failure to address the threshold condition whether *Brown*'s predicate-crime requirement was satisfied so as to permit a demand, on pain of arrest, for Mr. Romero's identification in the first place.

*Brown*'s requirement of "reasonable suspicion to believe the suspect was involved in criminal activity"). "[W]hatever purposes may be served by 'demanding identification from an individual [on pain of arrest for noncompliance] without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it.'" *Keylon*, 535 F.3d at 1216 (summarizing and quoting *Brown*, 443 U.S. at 52, in parenthetical). We have not been cited a single authority carving out an exception from the categorical requirement of reasonable suspicion of a crime, stated in *Brown* in 1979 and restated in *Hiibel* in 2004, so as to permit the arrest of a mere witness for failing to provide identification on demand.[4] Under such circumstances, officer Schum "cannot reasonably have relied on an expectation that we would do so," to retrospectively sanction conduct that was contrary to clearly established law. *Manzanares v. Higdon*, 575 F.3d 1135, 1147 (10th Cir. 2009) (holding officer who illegally held person in home without probable cause could not avoid clearly

[4]    In his appellate brief, officer Schum cites *Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006), for the proposition that, although "police have less authority to detain those who have witnessed a crime for investigatory purposes than to detain criminal suspects," *id.* at 1148, police may, at least under certain circumstances, briefly detain witnesses to obtain identification and statements and to gain control of a crime scene, *id.* at 1148-49 (holding detention exceeded what might have been permissible for such purposes). *Walker* was solely about the permissibility of the temporary detention of witnesses, and its dictum about seeking identification as one reason for such detention is in any event a long way from holding–in the face of clearly established Supreme Court authority–that a witness may be arrested for refusing to comply with such a request. Indeed, the very arrest held unlawful in *Brown* was for violating a state statute purporting to criminalize "Failure to Identify as Witness." *Brown*, 443 U.S. at 49 n.1.

established constitutional prohibition by arguing that court should craft novel exception for potential witnesses).

## III. PURPOSE AND SCOPE OF REMAND

That brings us to what should have been the focus of this critical aspect of the case: did officer Schum have reasonable suspicion that Mr. Romero was or had been engaged in criminal activity when he was arrested for concealing his identity. In the district court proceedings, officer Schum argued that Mr. Romero could have been suspected of one crime: contributing to the delinquency of a minor, in connection with Eve Maesta's stay at his home the night before the arrest, in violation of N. M. Stat. Ann. § 30-6-3. While there is no indication that officer Schum actually suspected Mr. Romero of this crime,[5] the analysis of

_____

[5]     Officer Schum did not indicate any suspicion of Mr. Romero for this offense in the incident report he prepared in connection with the arrest. *See* R. vol. I at 90-93. Nor did he testify to any such suspicion. Rather, as his affidavit reflects, officer Schum sought identification from Mr. Romero "so [he] [could] properly identify him in [his] report *as he was a witness with information* concerning a missing minor." R. vol. I at 39 (emphasis added). It came out at trial that, months after the incident, when Mr. Romero filed a complaint with the department, officer Schum prepared a memo to his supervisor in which he stated that he had been told by Louisa Maestas that Eve and Kevin had been hiding out with the Romeros, who let Eve and Kevin stay at their home for several days before the arrest, thus meeting the elements of contributing to the delinquency of a minor. But he went on to admit that the memo misstated these facts, which are contradicted by his contemporaneous incident report and his testimony at trial, showing that all he had been told was that Eve and Kevin had been allowed to stay just the one night and then were required to leave. He conceded there was no evidence that the Romeros had encouraged Eve to stay at their home. Indeed, the videotape of his conversations with the Romeros reflects vexation and disapproval from Mr. Romero regarding Kevin bringing Eve to their home.

reasonable suspicion, like probable cause, is not constrained by the officer's state of mind; rather, the question is whether the facts known to the officer objectively support reasonable suspicion of a crime–contemplated by the officer or not–that would justify the challenged detention. *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007) (making this point as to reasonable suspicion and probable cause); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (making this point as to probable cause).

But the district court never determined whether the evidence established reasonable suspicion of this crime. And that task is not lightly undertaken in the first instance by an appellate court, as it entails a mixed question of fact and law appropriately left to the district court here: "the district court must determine how the [New Mexico] courts would interpret [N. M. Stat. Ann. § 30-6-3] in like circumstances" and then " evaluate [the evidence] to determine if [it shows] the reasonable suspicion of a violation required under the Fourth Amendment." *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005) (remanding for district court to determine reasonable suspicion in first instance). Deferring this determination is especially appropriate in a civil rights case, where it may even prove to be a matter only a jury can resolve. *See generally Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007) (noting in civil rights context "that where there is a question of fact or room for a difference of opinion about the existence of probable cause, it is a proper question for a jury, even though [in criminal

-13-

cases] it is normally determined by a court during the warrant application process").

If officer Schum was not authorized to arrest Mr. Romero for concealing his identity due to the lack of reasonable suspicion of an underlying crime, the arrest was unconstitutional regardless of whether there was probable cause for the concealing-identity offense itself (*see supra* note 3) and whether the arrest was effected outside or inside the home. We therefore decline to consider the latter issues at this point. Accordingly, we remand this case for a determination whether the facts known to officer Schum afforded reasonable suspicion that Mr. Romero was, or had been, engaged in criminal activity when he was arrested for concealing his identity. Following that determination, the aggrieved party may, of course, appeal and challenge the disposition of any aspect of the case that has remained or has become adverse to his interest.

The judgment of the district court is VACATED in part and the cause is REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge