**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 29, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

TSUTOMU SHIMOMURA,

     Plaintiff - Appellant,

v.

KENDRA CARLSON, an agent of
the Transportation Security
Administration, in her individual
capacity; WADE DAVIS, a Denver
Police Department officer, in his
individual capacity,

     Defendants - Appellees,

and

TERRY CATES, an agent of the
Transportation Security
Administration, in her individual
capacity; PATTI ZELLER, an agent
of the Transportation Security
Administration, in her individual
capacity,

     Defendants.

No. 14-1418

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:13-CV-00462-RBJ-MJW)**
_____

Ty Gee, Haddon, (Laura G. Kastetter, with him on the briefs) Haddon,
Morgan, and Foreman, P.C., Denver, Colorado, for Plaintiff-Appellant.

Paul Farley, Assistant United States Attorney, (John F. Walsh, United States Attorney, with him on the brief) Office of the United States Attorney, Denver, Colorado, for Kendra Carlson, Defendant-Appellee.

Andrew J. Carafelli, Pryor Johnson Carney Karr Nixon, P.C., Denver, Colorado, for Wade Davis, Defendant-Appellee.

_____

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

Mr. Tsutomu Shimomura claims that an officer with the Denver Police Department (Wade Davis) and an agent with the Transportation Security Administration (Kendra Carlson) made an arrest without probable cause and conspired to fabricate grounds for the arrest. For these claims, Mr. Shimomura invoked 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Officer Davis and Agent Carlson violated the Fourth, Fifth, and Fourteenth Amendments.[1] On the Fourth Amendment claims, the district court granted two motions: (1) Officer Davis's motion for summary judgment based on qualified immunity and (2) Agent Carlson's motion to dismiss based on failure to state a valid claim. On the causes of action involving the Fifth and Fourteenth Amendments, the court granted the

_____

[1] In the complaint, Mr. Shimomura also invoked the First Amendment. But the First Amendment claim is not involved in this appeal.

2

defendants' motions to dismiss for failure to state a valid claim. Mr.

Shimomura appeals; to decide his appeal, we address four issues:

1.  **Did Officer Davis have qualified immunity (arguable probable cause) for the arrest?** Officer Davis arrested Mr. Shimomura for assault after seeing him push his roller bag toward Agent Carlson. Mr. Shimomura contends that Officer Davis lacked qualified immunity in determining that probable cause existed. Thus, we must decide whether Officer Davis enjoys qualified immunity.

    We conclude he does. Even if probable cause had been absent, Officer Davis would enjoy qualified immunity if probable cause had been at least arguable. In our view, probable cause was arguable because Officer Davis saw Mr. Shimomura push his roller bag toward Agent Carlson, observed her reaction by trying to avoid contact, and watched Mr. Shimomura move rapidly away. These observations could reasonably lead Officer Davis to believe there was probable cause involving an assault under a Denver city ordinance. Thus, Officer Davis enjoys qualified immunity on the claim of unlawful arrest.

2.  **Did Mr. Shimomura plead a plausible claim against Agent Carlson for fabrication and withholding of evidence to justify the arrest?** Mr. Shimomura claims that Agent Carlson violated the Fourth Amendment by fabricating evidence and withholding exculpatory evidence to justify the arrest. On these claims, we must decide whether the allegations plausibly implicate Agent Carlson in the decision to arrest Mr. Shimomura.

    We conclude they do not. Agent Carlson's conduct could not have caused the arrest because it would have taken place after the arrest. Accordingly, we conclude that Agent Carlson is entitled to dismissal of the unlawful arrest claim.

3.  **Did Mr. Shimomura plead a plausible claim of a conspiracy preceding the arrest?** According to Mr. Shimomura, Officer Davis and Agent Carlson conspired to violate the Fourth Amendment by making the arrest without probable cause. We must decide whether this claim was plausible based on the factual allegations in the complaint.

3

In our view, the claim fails under this test because Officer Davis arrested Mr. Shimomura within seconds of the alleged assault. Mr. Shimomura has not pleaded facts showing a plausible opportunity for Officer Davis and Agent Carlson to conspire in those few seconds.

4. **Did Mr. Shimomura plead a plausible claim involving deprivation of procedural due process?** Mr. Shimomura claims that the false arrest, initiation of false charges, and conspiracy deprived him of procedural due process under the Fifth and Fourteenth Amendments. We must decide whether the allegations in the complaint state a viable claim.

In our view, they do not. The Fourth Amendment—not the Fifth or Fourteenth Amendment's protection of procedural due process—generally governs pre-trial deprivations of liberty. Because the sole source of protection is the Fourth Amendment, we uphold dismissal of the claim involving deprivation of procedural due process.

I. **Officer Davis arrested Mr. Shimomura after seeing him push his roller bag toward Agent Carlson.**

In February 2011, Mr. Shimomura was going through security at the Denver International Airport, trying to catch a flight. At the security checkpoint, Mr. Shimomura presented his belongings for screening. When he did, a TSA agent conducted a test on Mr. Shimomura's medication, using a sampling strip. Mr. Shimomura was afraid that the test would contaminate his medication. Based on this fear, Mr. Shimomura asked about the sterility and toxicity of the sampling strip. The TSA agent's response did not satisfy Mr. Shimomura. So he asked for the agent's supervisor.

4

Agent Carlson was the TSA supervisor who responded. She stated that the sampling strips were sterile for screening purposes. But Mr. Shimomura remained unsatisfied, and the conversation grew heated while Officer Davis watched from nearby.

Eventually, Mr. Shimomura was told to leave the screening area. He complied and began walking away with his roller bag, with Agent Carlson and Officer Davis following closely behind. After taking a few steps, Mr. Shimomura stopped, and Officer Davis believed that the roller bag had hit Agent Carlson. A few seconds later, Officer Davis arrested Mr. Shimomura. Following Mr. Shimomura's arrest, Officer Davis, Agent Carlson, and other TSA agents conferred for approximately 90 minutes. Officer Davis then served Mr. Shimomura with a summons and complaint, charging him with assault for pushing his roller bag into Agent Carlson. *See* Rev. Mun. Code of Denver § 38-93. After reviewing the evidence, the prosecutor dismissed the criminal complaint against Mr. Shimomura.

This suit followed.

## II. Officer Davis was entitled to qualified immunity on the Fourth Amendment claim because he had arguable probable cause for the arrest.

Mr. Shimomura claims that he was arrested without probable cause. On this claim, the district court granted summary judgment to Officer Davis based on qualified immunity. This ruling was correct.

5

**A.   We engage in de novo review based on our two-part test for qualified immunity.**

We review de novo the district court's grant of summary judgment. *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1278 (10th Cir. 2003). The court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We apply this standard against the backdrop of our case law on qualified immunity. This immunity protects all government employees except those who are "plainly incompetent or those who knowingly violate the law." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To overcome this assertion of qualified immunity, Mr. Shimomura must show that (1) Officer Davis violated a federal statute or the U.S. Constitution and (2) the underlying rights were "clearly established at the time of their alleged violation." *Id.* To decide whether Mr. Shimomura made this showing, we view all evidence in the light most favorable to him as the nonmoving party. *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1172 (10th Cir. 2013).

Framed under these standards, "the salient Fourth Amendment questions presented are (1) whether [Officer Davis] possessed probable cause to arrest [Mr. Shimomura for assault]; and (2) whether extant clearly established law in [February 2011] would have placed a reasonable,

6

similarly situated police officer on notice that *no* probable cause existed."
*Quinn v. Young*, 780 F.3d 998, 1007 (10th Cir. 2015) (emphasis in original).

### B. Probable cause was at least arguable based on Officer Davis's observation of the events.

For the sake of argument, we can assume that probable cause was lacking. Even with this assumption, however, Officer Davis would enjoy qualified immunity if probable cause had been at least "arguable." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). In our view, probable cause would have been at least arguable.

To determine whether probable cause was arguable, we must begin with the standard for "probable cause." Under this standard, probable cause would exist if Officer Davis had reasonably trustworthy information that would lead a prudent person to believe that Mr. Shimomura had committed an offense. *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988).

The threshold question involves identification of the alleged offense. On this question, Officer Davis identified Mr. Shimomura's conduct as a third-degree assault under the Denver Municipal Code. Thus, we must determine what constituted a third-degree assault in February 2011.

The municipal code defined third-degree assault to include the intentional or reckless commission of an assault. Rev. Mun. Code of

7

Denver, § 38-93. Rather than define the word "assault," the municipal code referred to Colorado law. Under that law, third-degree assault required "bodily injury." Colo. Rev. Stat. Ann. § 18-3-204(1)(a) (2011). The term "bodily injury" referred to physical pain, illness, or any impairment of physical or mental condition. Colo. Rev. Stat. Ann. § 18-1-901(3)(c) (2011). This definition was "broadly inclusive" and included physical injuries even when they might have been considered only "slight." *People v. Hines*, 572 P.2d 467, 470 (Colo. 1977) ("broadly inclusive"); *United States v. Paxton*, 422 F.3d 1203, 1206 (10th Cir. 2005) ("slight").

In applying the municipal ordinance for assault, a reasonable police officer could have viewed probable cause as arguable. Mr. Shimomura relies largely on a video of the incident. The parties agree that this video is accurate, and Officer Davis acknowledged that it was consistent with what he had seen.[2] But we also note that Officer Davis's vantage point of the incident differs from ours as we watch the video. From our vantage point, we can see that Officer Davis walked behind both Agent Carlson and Mr. Shimomura. Officer Davis saw the same events from a different angle. *See* Appellant's App'x at 116 (TSA surveillance video at 2:03-2:06). Thus, when we watch the video, we see the events from in front of Mr.

---

[2]    Mr. Shimomura points out that the video does not show the earlier argument in the TSA screening area, does not contain audio, does not show Mr. Shimomura's or Agent Carlson's face, and Officer Davis is "barely visible." But Mr. Shimomura does not contest the accuracy of the video.

8

Shimomura; Officer Davis saw the events more closely from only a few feet behind Agent Carlson:



Though our vantage point differs from Officer Davis's, we can identify at least four facts that Officer Davis would have known:

1.  Mr. Shimomura was pulling his roller bag, which was between Mr. Shimomura and Agent Carlson.

2.  Mr. Shimomura stopped and moved his roller bag in Agent Carlson's direction.

9

3. Agent Carlson moved suddenly after the roller bag was pushed in her direction.

4. Mr. Shimomura walked away more rapidly after he pushed the roller bag in Agent Carlson's direction.

Mr. Shimomura suggests we add a fifth undisputed fact: that he and Agent Carlson had engaged in a heated disagreement.

Based on these five facts, Officer Davis could reasonably believe that Mr. Shimomura had intentionally or recklessly pushed his roller bag into Agent Carlson and caused her at least some slight physical injury. From our vantage point in watching the video, we cannot see the actual contact between Agent Carlson and the roller bag. But our view of the contact is impeded by the camera angle. Officer Davis had a different angle. *See Bogie v. Rosenberg*, 705 F.3d 603, 611 (7th Cir. 2013) (stating that "any . . . film shows only one perspective on a scene, so that additional perspectives, such as eyewitness testimony . . . , might reveal additional facts that would change the legal analysis"). And from his angle, Officer Davis had only a momentary opportunity to see what had taken place. (We have the luxury of watching the video repeatedly.) Officer Davis could then see Mr. Shimomura walking away more quickly after Agent Carlson had made a sudden movement. In these circumstances, a reasonable officer could believe that Mr. Shimomura had intentionally or recklessly caused at least some slight physical injury to Agent Carlson. As a result, probable cause was at least arguable.

10

**C. Probable cause would have remained arguable notwithstanding Mr. Shimomura's explanation for his quickened pace and challenges to Agent Carlson's credibility.**

Mr. Shimomura argues that his quickened pace did not suggest guilt, for he might simply have had to hurry to catch his flight. But probable cause could have existed even if his conduct might also be interpreted as innocent. *See United States v. Muñoz-Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008) ("[S]imply because an activity has an innocent connotation does not mean that it is excluded from the court's totality of the circumstances analysis.").

Mr. Shimomura also argues that Officer Davis should have discounted Agent Carlson's description of the events, giving three reasons:

1.    A heated argument had just taken place between Agent Carlson and Mr. Shimomura.

2.    Mr. Shimomura denied pushing his roller bag into Agent Carlson.

3.    Other witnesses did not say that Agent Carlson had been injured.

But these arguments would not preclude Officer Davis from reasonably believing that probable cause existed.

Agent Carlson and the other witnesses made their statements after Mr. Shimomura's arrest; thus, these statements could not have affected the decision to arrest. And Officer Davis could see for himself what had taken place when Mr. Shimomura pushed his roller bag toward Agent Carlson. In

11

observing the incident and Mr. Shimomura accelerating his pace afterward, Officer Davis could reasonably conclude that Mr. Shimomura had intentionally or recklessly pushed his roller bag into Agent Carlson to create at least some slight physical injury.

That push might not have created probable cause for third-degree assault. But probable cause would have been at least arguable even if (1) Mr. Shimomura had an innocent explanation for walking away more quickly and (2) Officer Davis had discounted Agent Carlson's description of events.

### D. Mr. Shimomura's characterization of the video recording does not create a fact issue on arguable probable cause.

Mr. Shimomura argues that Officer Davis is not entitled to qualified immunity because the video recording is inconsistent with the defendants' statements regarding the alleged assault. According to Mr. Shimomura, the video recording shows that Mr. Shimomura did not push his roller bag into Agent Carlson. But from where Officer Davis was positioned, he could reasonably believe that (1) he had seen Mr. Shimomura push his roller bag into Agent Carlson and (2) the contact resulted in at least slight physical injury.[3] The reasonableness of that belief made probable cause at least

---

[3] Mr. Shimomura relies on *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998), to oppose qualified immunity for Officer Davis. In *Baptiste*, a police officer searched the plaintiff for stolen merchandise after watching surveillance video of a suspected theft. *Baptiste*, 147 F.3d at

12

arguable. Thus, even when we consider the evidence in the light most favorable to Mr. Shimomura, we conclude that Officer Davis is entitled to qualified immunity on the Fourth Amendment claim of unlawful arrest.

**E.     Probable cause would have remained arguable notwithstanding Mr. Shimomura's allegations in the complaint and uncertainty about what Officer Davis could see.**

In reaching a contrary conclusion, the partial dissent points to

- Mr. Shimomura's allegation in the complaint "that [Officer Davis] could not reasonably perceive evidence of bodily injury, such as pain" and

- uncertainty about what Officer Davis would have seen from his angle.

Dissent at 1-2. In our view, these two points do not create a genuine fact-issue on whether probable cause was at least arguable.

Because the issue involves summary judgment, we must rely on the summary judgment record rather than Mr. Shimomura's allegations in the complaint. In support of the summary judgment motion, Officer Davis stated under oath that he had seen the roller bag strike Agent Carlson in the legs. Appellant's App'x at 112. Mr. Shimomura responded to the motion, presenting affidavits by himself and Agent Carlson. Agent

1254-55. We concluded that the police officer was not entitled to qualified immunity because the video did not suggest that a theft had occurred. *Id.* at 1259-60. Mr. Shimomura's circumstances are different, for the video recording does not preclude a reasonable belief that a crime (assault) had been committed. Thus, *Baptiste* does not preclude qualified immunity for Officer Davis.

13

Carlson's affidavit said that Officer Davis had seen the contact between the roller bag and Agent Carlson. *Id.* at 176. Mr. Shimomura's affidavit was silent about what Officer Davis could see. Thus, for purposes of summary judgment, we have undisputed evidence that Officer Davis was able to see the contact between Agent Carlson and Mr. Shimomura's roller bag.

Mr. Shimomura denies that Agent Carlson was physically injured, and Officer Davis believed there was physical injury. Neither individual could know for certain, but the sole issue on qualified immunity is whether Officer Davis could reasonably believe the contact resulted in at least some slight physical injury to Agent Carlson. Even if Officer Davis's belief was wrong, he would have enjoyed qualified immunity as long as his belief was reasonable. *See Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir.) ("Arguable probable cause is another way of saying the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."), *cert. denied*, __ U.S. __, 135 S. Ct. 881 (2014).

In our view, Officer Davis's belief was reasonable notwithstanding Mr. Shimomura's contrary allegations in his complaint. In Mr. Shimomura's affidavit, there is nothing casting doubt on Officer Davis's belief that Agent Carlson had suffered at least some slight injury. As a result, Officer Davis would enjoy qualified immunity even if we fully credit everything in Mr. Shimomura's affidavit.

14

**III. Agent Carlson could not incur liability under the Fourth Amendment for an unlawful arrest because her alleged misconduct would have taken place after the arrest.**

Mr. Shimomura argues that Agent Carlson violated the Fourth Amendment by withholding and fabricating evidence to justify the arrest.[4] The district court dismissed this claim, concluding that Mr. Shimomura had not adequately pleaded causation between Agent Carlson's conduct and the arrest. In a later order, the district court declined to vacate this dismissal. In our view, the court did not err in dismissing the claim against Agent Carlson.

We review de novo the district court's grant of a motion to dismiss for failure to state a claim. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1275 (10th Cir. 2009). Like the district court, we must determine whether the complaint contains sufficient facts, accepted as true, to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether the claim is plausible, we view all factual allegations in the light most favorable to Mr. Shimomura

---

[4] Mr. Shimomura also contends that Agent Carlson incurred liability as an arresting officer because she had "acted in concert with Officer Davis to effect the illegal arrest lacking in probable cause." Appellant's Opening Br. at 35. This argument is identical to Mr. Shimomura's argument underlying his conspiracy claim, which we reject below in Part IV.

as the nonmoving party. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 510 (10th Cir. 1998).

As was previously stated, a warrantless arrest without probable cause violates the Fourth Amendment. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). But nothing in the complaint would plausibly suggest Agent Carlson's participation in the arrest.

Mr. Shimomura disagrees, arguing that Agent Carlson caused the arrest by withholding exculpatory evidence and fabricating a sworn statement that she had suffered pain from her contact with the roller bag. Officer Davis allegedly relied on Agent Carlson's fabricated account.

This contention fails as a matter of law because Agent Carlson's alleged misdeeds would have taken place after Officer Davis had already arrested Mr. Shimomura. Agent Carlson allegedly withheld exculpatory evidence and fabricated a sworn statement, but only after Officer Davis had already initiated Mr. Shimomura's 90-minute detention. That detention constituted an arrest as a matter of law. *See Manzanares v. Higdon*, 575 F.3d 1135, 1148 (10th Cir. 2009)[5]; *see also* Appellant's App'x at 152-53 (Mr. Shimomura's argument that Officer Davis made an arrest by detaining

---

[5] In *Manzanares* we stated: "As the Supreme Court has noted, it has never held a detention of 90 minutes or longer to be anything short of an arrest. [The defendant] points us to no case, and our independent research reveals none, construing a detention of 90 minutes or longer as an investigative detention." *Manzanares*, 575 F.3d at 1148 (citation omitted).

16

Mr. Shimomura in the screening area). Thus, Agent Carlson's misconduct could not have caused the arrest. In these circumstances, we conclude that Agent Carlson is entitled to dismissal on the unlawful arrest claim.[6]

## IV. Mr. Shimomura has not pleaded a plausible conspiracy claim based on the Fourth Amendment.

Invoking 42 U.S.C. § 1983, Mr. Shimomura also claims that Officer Davis and Agent Carlson violated the Fourth Amendment by conspiring (1) to make the arrest without probable cause and (2) to fabricate their accounts for the initiation of criminal charges. We affirm the district court's dismissal of these causes of action for failure to state a claim upon which relief can be granted.[7]

### A. We engage in de novo review, considering the plausibility of the allegations in the complaint.

In reviewing the dismissal, we engage in de novo review. *See* p. 15, above. The ultimate question is whether Mr. Shimomura had alleged specific facts showing (1) an agreement and concerted action between

---

[6] On the cause of action under the Fourth Amendment for unlawful arrest, Agent Carlson also asserts qualified immunity and unavailability of a *Bivens* claim. We need not reach these contentions.

[7] On the conspiracy claim, Agent Carlson denies the availability of a *Bivens* cause of action and invokes qualified immunity. We need not address these arguments. The conspiracy claim against Officer Davis and Agent Carlson was brought under 42 U.S.C. § 1983, not *Bivens*. Therefore, we need not reach Agent Carlson's *Bivens* argument. And because the conspiracy claim is facially deficient, we need not decide whether Agent Carlson is entitled to qualified immunity on this claim.

Officer Davis and Agent Carlson and (2) an actual deprivation of constitutional rights. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). Conclusory allegations of conspiracy would not suffice. *Tonkovich*, 159 F.3d at 534.

**B.    For the arrest, Mr. Shimomura has not pleaded facts creating a plausible claim of conspiracy prior to the arrest.**

The conspiracy allegations in the complaint involve conduct before the arrest. Thus, on the claims involving conspiracy to justify the arrest, we confine our review to the allegations involving conduct preceding the arrest. These allegations involve six facts[8]:

1.    Officer Davis saw Agent Carlson communicate with Mr. Shimomura in an "increasingly hostile and intimidating manner." This conduct included Agent Carlson's refusal to contact her supervisor or provide her supervisor's name, angry threats to remove Mr. Shimomura from the airport, order for Mr. Shimomura to "get the hell out" of the TSA screening area, and statement that Mr. Shimomura had accused Agent Carlson of stealing. Appellant's App'x at 11-12 ¶¶ 18-20.

2.    Officer Davis refused to put Mr. Shimomura in contact with Agent Carlson's supervisor. *Id.* at 12 ¶ 21.

---

[8]    In his appeal briefs, Mr. Shimomura alleges that Officer Davis failed to deescalate the increasingly hostile situation. But we decline to consider this argument because it had not been raised in district court. *See United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1228 (10th Cir. 2003) (noting that we will decline to consider factual arguments that had not been raised in district court).

18

3. Officer Davis and Agent Carlson threatened to have Mr. Shimomura arrested if he did not leave the screening area "in two seconds." *Id.*

4. Officer Davis and Agent Carlson "crowded Mr. Shimomura in a threatening manner" and followed him "closely and aggressively" as he left the screening area. *Id.* at 12 ¶¶ 21-22.

5. Officer Davis and Agent Carlson "knew" that (1) Mr. Shimomura had not committed a crime, (2) there was no probable cause for Mr. Shimomura's arrest, (3) Agent Carlson had been following Mr. Shimomura "too closely," and (4) Agent Carlson had become even "further enraged" when she walked into the roller bag. *Id.* at 14 ¶ 28.

6. Officer Davis and Agent Carlson believed that Mr. Shimomura should be criminally punished for questioning TSA screening procedures. As a result, Officer Davis and Agent Carlson took "joint and concerted action" to arrest Mr. Shimomura. *Id.* at 15 ¶ 29; *Id.* at 13 ¶ 24.

For the sake of argument, we can assume that Mr. Shimomura has pleaded facts reflecting an agreement and concerted action by Officer Davis and Agent Carlson. But the alleged agreement could not plausibly have preceded Mr. Shimomura's arrest. The video reflects the incident, which unfolded only a few seconds before Officer Davis detained Mr. Shimomura (constituting an arrest).

It might have been theoretically possible for Officer Davis and Agent Carlson to conspire to arrest Mr. Shimomura without probable cause. Perhaps Officer Davis and Agent Carlson decided to arrest Mr. Shimomura even before his belongings were screened; or maybe Officer Davis and Agent Carlson conspired in the few seconds between the roller bag contact

19

and Mr. Shimomura's arrest; or perhaps Officer Davis and Agent Carlson knew and understood one another so well that they immediately formed an unspoken agreement to unlawfully arrest Mr. Shimomura. But Mr. Shimomura does not allege facts that could plausibly explain how Officer Davis and Agent Carlson might have conspired in the moments preceding the arrest.

Accordingly, Mr. Shimomura has not pleaded a plausible § 1983 claim for conspiracy to arrest without probable cause in violation of the Fourth Amendment. We affirm the dismissal of this claim.

### C. The district court did not err in disallowing amendment of the Fourth Amendment claim.

In responding to Agent Carlson's motion to dismiss, Mr. Shimomura included a footnote requesting "leave to amend should the Court find his Complaint deficient." *Id.* at 121 n.1. Though the district court suggested that Mr. Shimomura might amend the complaint, the court ultimately prevented amendment by making the dismissal with prejudice. *Id.* at 218, 229.

Mr. Shimomura alleges that the district court abused its discretion by preventing amendment of the complaint. We disagree. Mr. Shimomura alleges in the complaint that he was taken into custody by Officer Davis, not Agent Carlson. *See id.* at 12. Thus, amendment of the complaint would have been futile. In these circumstances, we conclude that the district court

20

had discretion to make the dismissal with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## V.    Mr. Shimomura has not pleaded a viable claim for deprivation of procedural due process.

Finally, Mr. Shimomura claims deprivation of procedural due process under the Fifth and Fourteenth Amendments. The Fifth Amendment prohibits the federal government from depriving a person of "life, liberty, or property, without due process of law," and the Fourteenth Amendment extends this prohibition to the states. U.S. Const. amend. V; *Id.* amend. XIV, § 1.

On these claims, Mr. Shimomura alleges that Officer Davis and Agent Carlson withheld exculpatory evidence, fabricated inculpatory evidence, and engaged in a conspiracy. The district court dismissed these claims, reasoning that they "effectively mirror[]" Mr. Shimomura's claims under the Fourth Amendment. Appellant's App'x at 220. For this ruling, we engage in de novo review. *See* p. 15, above. In exercising de novo review, we uphold the district court's dismissal because the Fourth

21

Amendment applies rather than the Fifth and Fourteenth Amendments' Due Process Clauses.[9]

Mr. Shimomura is correct in asserting the constitutional requirement for probable cause before he could be arrested or charged. *Wilkins v. DeReyes*, 528 F.3d 790, 805 (10th Cir. 2008). But this right is protected by the Fourth Amendment, not by the Fifth or Fourteenth Amendments' rights to procedural due process. The Supreme Court has held that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Albright v. Oliver*, 510 U.S. 266, 274-75 (1994) (plurality opinion) (stating that the right to be free of arrest and prosecution without probable cause is governed by the Fourth Amendment, not the constitutional protections for substantive due process). We have applied this holding when the alleged denial of due process is procedural rather than substantive. *See Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir.

---

[9] Agent Carlson also makes four other arguments: (1) an adequate post-deprivation remedy exists; (2) Agent Carlson is not subject to the Fourteenth Amendment because she is not a state actor; (3) a *Bivens* action does not exist for claims involving airport screening or violation of the Fourteenth Amendment; and (4) Agent Carlson is entitled to qualified immunity. We need not address these arguments because the claim against Agent Carlson is deficient on other grounds.

2007) ("[W]e find *Albright*'s reasoning regarding substantive due process equally persuasive with regard to the Fourteenth Amendment's procedural component. . . . The more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment . . . .").

It is true that "at some point in the prosecutorial process, due process concerns can be sufficient to support claim under § 1983." *Id.* at 920; *see also Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004) ("[A]t some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause."). But Mr. Shimomura's factual allegations do not cross into the due-process realm.

In *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007), we "acknowledge[d] that the Fourteenth Amendment's protections encompass harms to liberty outside the scope of the Fourth Amendment's concern with freedom from restraint." *Becker*, 494 F.3d at 920. But Mr. Shimomura has confined his allegation of injury to the deprivation of his physical liberty. Thus, his claim is governed by the Fourth Amendment rather than the Due Process Clauses.

Because the Fourth Amendment provides the sole source of constitutional protection, Mr. Shimomura has not asserted a valid claim of procedural due process. As a result, the district court properly dismissed the claims involving procedural due process.

23

## VI.  Conclusion

The district court's judgment is affirmed.

No. 14-1418, *Shimomura v. Carlson*

**TYMKOVICH**, Chief Judge, concurring in part and dissenting in part:

I join the majority except as to its holding that Officer Davis is entitled to qualified immunity.

In concluding that a reasonable officer with Officer Davis's vantage point could have thought there was probable cause, the majority decides a factual dispute that should be submitted to a jury. Shimomura alleges that Officer Davis could not reasonably perceive evidence of intent or recklessness. He also alleges that the officer could not reasonably perceive evidence of bodily injury, such as pain. If that version of the facts is true, then there was neither actual nor arguable probable cause to believe Shimomura had committed assault within the agreed-upon meaning of the ordinance. That satisfies Shimomura's initial burden to allege a clearly established violation of a constitutional right. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1158–59 (10th Cir. 2008) ("In the context of an unlawful arrest our analysis is simple, for the law was and is unambiguous: a government official must have probable cause to arrest an individual." (brackets and internal quotation marks omitted)). It also places a new burden on Officer Davis, on his motion for summary judgment based on qualified immunity, to show that Shimomura's version of the facts is wrong—that is, that an officer *could* have reasonably perceived evidence of bodily injury and intent or recklessness. Officer Davis has not met that burden.

The majority concludes that a person standing at Officer Davis's vantage point could have perceived the requisite evidence, but that is not beyond dispute. Recently, in *Tolan v. Cotton*, 134 S. Ct. 1861 (2014), the Supreme Court reversed a finding of qualified immunity because the appellate court had resolved disputed factual propositions in favor of the moving officer. Most notably, the Court indicated that disputed questions about what facts an officer should have *perceived* are appropriate for a jury:

> The court noted, and the parties agree, that while Cotton was grabbing the arm of his mother, Tolan told Cotton, "[G]et your [f***ing] hands off my mom." But Tolan testified that he "was not screaming." *And a jury could reasonably infer that his words, in context, did not amount to a statement of intent to inflict harm.*

*Id.* at 1867 (emphasis added) (citations omitted). This illustrates the divide between determining whether there was probable (or arguable probable) cause and determining the facts that support probable cause. Just as a jury in *Tolan* should have decided whether the undisputed words, in context, seemed threatening, a jury here should decide whether the undisputed contact, in context, seemed intentional or capable of causing bodily injury.

We do not know what Officer Davis saw from his angle. All we have is the video, Shimomura's complaint, and affidavits presented on summary judgment. Those materials do not definitively settle the facts in Officer Davis's favor. A jury could find that even given his angle and how little time he had to process

2

what had happened, it was unreasonable to think the contact was intentional or reckless. And a jury most certainly could find that there was no evidence of bodily injury. Having watched the video, I find it dubious that anyone viewing the contact from *any* angle could have reasonably thought that Agent Carlson felt pain. Although she later reported pain, it appears that this was not until after Shimomura's arrest.

For those reasons, I respectfully dissent as to the conclusion that Officer Davis is entitled to qualified immunity.