**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

**July 2, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

CAITANYA A. CHAMPION,

    Plaintiff - Appellant,

v.

OFFICER GREG MCCALISTER;
WADE GOURLEY, Police Chief,
Oklahoma City Police Department;
OKLAHOMA CITY POLICE
DEPARTMENT,

    Defendants - Appellees.

No. 23-6141
(D.C. No. 5:22-CV-00012-JD)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MORITZ**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.
_____

Plaintiff Caitanya A. Champion, proceeding pro se, appeals from the district court's orders dismissing his civil rights complaint against the Oklahoma City Police Department ("OCPD"), Police Chief Wade Gourley, and Officer Greg McCalister. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. Relevant Facts[1]

This case arises out of a traffic stop. On May 7, 2021, McCalister observed Champion driving without a seatbelt and pulled him over. When McCalister asked Champion to produce his driver's license, Champion refused, informed McCalister that he was exercising his constitutional right to travel freely, then drove away. After calling for backup, McCalister pursued Champion, who was ultimately stopped with the aid of Stop Sticks, a tire deflation device. Champion was arrested and charged for the seatbelt violation, attempting to elude the police, and an illegal tag display.[2] During the subsequent search and impoundment of his car, officers discovered and confiscated two firearms.

### B. District Court Proceedings

In January 2022, Champion sued the defendants under 42 U.S.C. § 1983, claiming the traffic stop, his arrest, the search and impoundment of his car, and the confiscation of his firearms violated his constitutional rights. In his complaint, Champion did not claim to be wearing a seatbelt at the time of the stop but asserted he

---

[1] These facts are taken from the well-pleaded allegations in Champion's complaint. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("In ruling on a motion to dismiss for failure to state a claim, all well-pleaded *facts*, as distinguished from conclusory allegations, must be taken as true, and the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." (Internal quotation marks and brackets omitted)).

[2] Champion was ultimately convicted of these offenses, a fact of which the district court took judicial notice, and that Champion does not dispute on appeal.

had "no duty to comply with an unlawful order of Officer Greg McCalister and the defendant had no right and justification to deprive [him] of his constitutionally protected right to travel." R. at 17. He further alleged that he "was arrested, his vehicle was impounded, he was detained at the county jail, . . . [and] his two firearms were confiscated without a warrant or due process hearing." *Id.* Based on these facts, Champion alleged deprivations of (1) his right to travel under the Fifth and Fourteenth Amendments; (2) his right to be free from unreasonable searches and seizures under the Fourth Amendment; (3) his right to liberty and property under the Fifth and Fourteenth Amendments; and (4) his right to keep and bear arms under the Second Amendment. In both his original and amended complaints, which Champion submitted on court-provided forms, he checked boxes to indicate he was suing Gourley and McCalister in their official capacities.

The district court granted defense motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). It dismissed the claims against the OCPD on the ground that a police department is not a suable entity. The court construed the official-capacity claims against the individual defendants as claims against the City of Oklahoma City, and concluded Champion had failed to state a plausible claim against the City under the standard for municipal liability set forth in *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).[3] The court

---

[3] Contrary to Champion's assertions, the district court did not dismiss any of his claims based on qualified immunity. As the court stated, "the defense of qualified immunity is available only in suits against officials sued in their personal capacities, not in suits against officials sued in their official capacities." R. at 74, n.4 (brackets,

concluded Champion could theoretically cure the defects in his municipal liability claims through further amendment, so it gave him fourteen days to seek leave to amend. When he did not do so, the court entered judgment in favor of all defendants. This appeal followed.

## II. DISCUSSION

### A.  Standard of Review

We review a dismissal for failure to state claim under Rule 12(b)(6) de novo. *Estate of Burgaz v. Bd. of Cnty. Comm'rs*, 30 F.4th 1181, 1185 (10th Cir. 2022). "To survive a motion to dismiss, a complainant must allege facts that, if true, state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (brackets and internal quotation marks omitted).

As a pro se litigant, Champion is entitled to a liberal construction of his pleadings. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But he still must comply with the rules that govern other litigants, and we do not act as his "attorney in constructing arguments and searching the record." *Id.*

---

ellipses, and internal quotation marks omitted) (citing *Cox v. Glanz*, 800 F.3d 1231, 1239, n.1 (10th Cir. 2015)). Accordingly, the district court did not engage in a qualified-immunity analysis, and neither do we.

**B.  Municipal Liability Claims**

"A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Watson v. City of Kan. City*, 857 F.3d 690, 695 (10th Cir. 1988).  Accordingly, the district court was correct to construe Champion's official-capacity claims against McCalister and Gourley as claims against Oklahoma City.  It was also correct to dismiss the claims against the OCPD, because "police departments are not usually considered legal entities subject to suit." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (dismissing complaint against City of Denver Police Department because it "is not a separate suable entity"), *vacated as moot*, 800 F.2d 230 (10th Cir. 1986)).  We therefore consider whether Champion's complaint stated a plausible claim for relief against Oklahoma City.

His claims are based on a failure-to-train theory of municipal liability.  As alleged in the complaint, "the Oklahoma City Police Department trains their officers to enforce the vehicle code and the criminal code but does not provide their officers with adequate training in Constitutional law, civil liberties and applicable case law thus producing officers who are unqualified as law enforcement officers."  R. at 18; *see also* Aplt. Opening Br. at 14 ("The police chief trains the officers.  He teaches them how to act and it was the actions of the arresting officer that deprived plaintiff of his rights.").  Failure to train is a cognizable theory of liability under § 1983, but Oklahoma City cannot be held liable solely because one of its police officers inflicted injury.  *See Crowson v. Washington Cnty.*, 983 F.3d 1166, 1191 (10th Cir. 2020) ("A core principle

5

of *Monell* liability is that municipal entities are liable only for their own actions and not vicariously liable for the actions of their employees."); *see also Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (holding that a municipality "will not be held liable under § 1983 solely because its employees inflicted injury"). To state a claim against a city in this context, a plaintiff "must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Crowson*, 983 F.3d at 1184 (internal quotation marks omitted).

The district court explained at length why Champion's complaint fell short of these elements, and we do not disagree with its analysis. We note, however, that Champion is a pro se litigant. And given the thrust of his arguments on appeal, it appears he may not have appreciated the distinction between individual-capacity and official-capacity claims when he checked the boxes on his form complaint. We therefore focus our discussion on the complaint's fundamental failure to allege an underlying constitutional violation, which is fatal to both types of claims. *See id.* at 1186 ("[A] claim under § 1983 against either an individual actor or a municipality cannot survive a determination that there has been no constitutional violation."); *Estate of George v. City of Rifle*, 85 F.4th 1300, 1321 (10th Cir. 2023) (rejecting municipal liability claim because plaintiff failed to show police officer violated his constitutional rights), *petition for cert. docketed* (U.S. May 22, 2024) (No. 23-1232); *Burgaz*, 30 F.4th at 1189 ("For a municipality . . . to be held liable for either a failure-to-train or failure-to-supervise claim, an individual officer . . . must have committed a constitutional violation."); *Reavis ex rel. Estate of Coale v. Frost*, 967 F.3d 978, 984

6

(10th Cir. 2020) (explaining that qualified immunity shields officials from personal liability so long as their conduct does not violate a clearly established constitutional right).[4]

### 1. Right to Travel Claim

The freedom to travel interstate "has long been recognized as a basic right under the Constitution." *United States v. Guest*, 383 U.S. 745, 758 (1966); *see also Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1118 (10th Cir. 2021) (per curiam) (observing the right to travel is a "basic constitutional freedom" (internal quotation marks omitted)). But this right does not absolve travelers from complying with licensing, registration, and seatbelt laws any more than it excuses ignoring a red light. To the contrary, the constitutional right to travel is both limited in scope and subject to reasonable restrictions. As we explained in *United States v. Eckhart*, 569 F.3d 1263, 1272 (10th Cir. 2009), the Constitution "protects interstate travelers against two sets of burdens: the erection of actual barriers to interstate movement and being treated differently from intrastate travelers." (internal quotation marks omitted). Just as in *Eckhart*, which involved a challenge to Utah's license plate law, "[n]either set of burdens is implicated here." *Id.*

---

[4] A "limited exception" to his rule recognizes a due process claim against a municipality absent an underlying constitutional violation when the municipal policy "devolves responsibility across multiple officers" such that no "single officer is positioned to prevent the constitutional violation." *Crowson*, 983 F.3d at 1191. Champion's complaint alleges no facts that would support application of this exception.

Champion did not allege that he was barred from crossing state lines. But even if this case involves interstate travel, reasonable restrictions on such travel are constitutionally permissible. *See Abdi v. Wray*, 942 F.3d 1019, 1029 (10th Cir. 2019). States have a vital interest in ensuring highway safety, which extends to the enforcement of "licensing, registration, and vehicle inspection requirements." *Delaware v. Prouse*, 440 U.S. 648, 658 (1979); *see United States v. Dawson*, 90 F.4th 1286, 1291 (10th Cir. 2024) (explaining that "an officer's mission during a traffic stop includes" making inquiries "to ensure that vehicles on the road are operated safely and responsibly" (brackets and internal quotation marks omitted)). Indeed, the Supreme Court has rejected constitutional challenges to arrests for minor traffic violations including seatbelt violations, *see Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), and we have rejected a right-to-travel challenge to a traffic stop, concluding that license plate regulations are not unreasonably restrictive, *see United States v. Martinez,* 512 F.3d 1268, 1273 n.2 (10th Cir. 2008). Champion alleges no facts that plausibly suggest Oklahoma City's seatbelt and licensing laws unreasonably restrict interstate travel.

Nor does he allege that Oklahoma City treats intrastate and interstate travelers differently when it comes to enforcing these laws. Accordingly, he has not alleged a constitutional violation. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (holding that a purely intrastate restriction does not implicate the right of interstate travel unless applied discriminatorily against travelers from other states).

## 2. Fourth Amendment Claims

Champion argues the defendants subjected him to unlawful arrest and unreasonable search and seizure in violation of the Fourth Amendment.[5]

As to the arrest, the following facts are undisputed: (1) Champion was required to wear a seatbelt while driving, *see* 47 Okla. St. Ann. § 112-417; (2) he was not wearing a seatbelt when McCalister pulled him over; (3) the seatbelt violation was the reason McCalister pulled him over; (4) when McCalister asked to see his license, Champion drove away; and (5) despite being pursued by multiple officers, Champion only stopped when his tires were destroyed by police Stop Sticks. Given these facts, Champion's arrest for the seatbelt violation and attempting to elude police unquestionably survives Fourth Amendment scrutiny. *See id.* (mandating seatbelts), 21 Okla. St. Ann. § 540A (setting forth offense of eluding a police officer); *see also Atwater*, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015) ("As a general matter, a warrantless arrest is consistent with the Fourth Amendment when there is probable cause to believe the

---

[5] He also claims the arrest, search, and seizure deprived him of his liberty and property interests under the Fifth and Fourteenth Amendments. But his only reference to the Fifth and Fourteenth Amendments is in connection with his specific allegations implicating his Fourth Amendment rights. Accordingly, his Fifth and Fourteenth Amendment claims were properly dismissed. *See Shimomura v. Carlson*, 811 F.3d 349, 361 (10th Cir. 2015) (explaining that the constitutional right to be free from warrantless arrest absent probable cause arises under the Fourth Amendment, not the Fifth and Fourteenth Amendments' Due Process Clauses).

arrestee has committed a crime."). Thus, the district court properly dismissed Champion's claim challenging the constitutionality of his arrest.

The district court also properly dismissed Champion's Fourth Amendment claim based on the OCPD's decision to impound his car and the ensuing search of the car and seizure of his firearms. A warrantless search or seizure is reasonable if it "falls within a specific exception to the warrant requirement." *United States v. Braxton*, 61 F.4th 830, 833 (10th Cir. 2023). Those exceptions include searches and seizures pursuant to the police's community caretaking function and searches conducted for inventory purposes. *See id.* Both exceptions apply here.

"When [a] driver is arrested, the police must decide what to do with the car." *United States v. Woodard*, 5 F.4th 1148, 1150 (10th Cir. 2021). Impounding the car is justified when leaving it where it is during the arrest would create a traffic hazard, expose it to vandalism or theft, or otherwise threaten public safety. *See id.; see also United States v. Sanders*, 796 F.3d 1241, 1244 (10th Cir. 2015) (citing examples of lawful grounds for impoundment). And although the arresting officer must consider reasonable alternatives to impoundment, *Braxton*, 61 F.4th at 836-37, he is "not required to allow [the driver] to call someone to come pick up the [car] and then . . . wait around for the new driver to arrive," *United States v. Trujillo*, 993 F.3d 859, 870 (10th Cir. 2021).

Champion's complaint does not say where the car was when he was arrested, but as the district court noted, given the state of its tires, it "was inoperable regardless of its location [and] no one else was immediately present who could secure the vehicle,

10

or have it towed." R. at 85; *see Trujillo*, 993 F.3d at 867 (observing that "unoccupied vehicles may still constitute nuisances, although their impact on traffic is questionable"). And Champion alleged no facts suggesting a reasonable alternative to impoundment was readily available. *Cf. Braxton*, 61 F.4th at 837 (holding that presence of arrestees' girlfriend who asked to take possession of his property was a reasonable alternative to impoundment). Nor did he allege facts suggesting the impoundment was pretextual or that the OCPD failed to follow standardized procedures. *See Sanders*, 796 F.3d at 1248 (holding impoundment must be justified by standardized policies when the vehicle is on private property and is neither obstructing traffic nor threatening public safety). To the contrary, the facts suggest that the OCPD properly performed its community-caretaking function in impounding Champion's car and conducting an inventory search of its contents. *See Woodard*, 5 F.4th at 1150 ("[W]e typically allow the police to determine what's inside the car before it's impounded.").[6]

---

[6] Champion indicated in his complaint that defendants still have possession of his property. But to the extent his general assertions may be read to assert a deprivation-of-property claim under the Fourteenth Amendment, his allegations were insufficient to state a plausible claim because he did not allege facts concerning the lack of an adequate state remedy for the deprivation. *See Gee v. Pacheco*, 627 F.3d 1178, 1194 (10th Cir. 2010) (explaining that a plausible claim for deprivation of property under the Fourteenth Amendment must include facts showing "the lack of an adequate state remedy for that deprivation"). Finally, because Champion's guns were seized pursuant to a lawful inventory search, the district court was correct to dismiss his Second Amendment claim.

**C.  Arguments Regarding Judicial Bias**

Lastly, we address Champion's allegations of bias against the district court, which are based on (1) the court's failure to rule on his opposition to McCalister's motion to dismiss; and (2) its granting of Gourley's motion despite Gourley's alleged failure to serve it on Champion.  "Normally, a party alleging judicial bias should move for recusal, and must do so in a timely fashion." *United States v. Nickl*, 427 F.3d 1286, 1297 (10th Cir. 2005) (internal quotation marks omitted).  Champion did not move for recusal.  We therefore review his claims of bias for plain error, which is one that "affects substantial rights" and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

The district court did not err here.  The court acknowledged Champion's response in opposition to McCalister's motion, *see* R. at 69, and considered his arguments.  It was not required to issue two orders separately addressing the motion and response.  Champion's argument regarding lack of service is puzzling given that Gourley's certificate of service indicates the motion was mailed to Champion's physical and email addresses of record.  But even assuming he did not receive the motion, Champion suffered no prejudice because the grounds for dismissal of both motions were the same, and the district court had the benefit of Champion's response to McCalister's motion.  Champion admits he became aware of Gourley's motion when the court issued its adverse ruling.  And as we mentioned earlier, the court gave Champion an opportunity to file a second amended complaint, and he failed to do so.

12

Nor did he file a motion in the district court complaining about the lack of service. He cannot now claim procedural unfairness stemming from judicial bias.

The judgment of the district court is affirmed.

Entered for the Court

Richard E.N. Federico
Circuit Judge